HEATHER MEWES (CSB NO. 203690)
hmewes@fenwick.com
DAVID M. LACY KUSTERS (CSB NO. 241335)
dlacykusters@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    (415) 875-2300
Facsimile:    (415) 281-1350

Attorneys for Defendant and Counterclaimant
HEALTH SERVICES INTEGRATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLDEN HOUR DATA SYSTEMS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH SERVICES INTEGRATION, INC., a California Corporation,<br><br>Defendant. | Case No. 3:06-cv-07477-SI<br><br>**DEFENDANT HEALTH SERVICES INTEGRATION, INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND PRELIMINARY INVALIDITY CONTENTIONS**<br><br>Date:     June 27, 2008<br>Time:     9:00 a.m.<br>Ct. Rm.:  10<br>Judge:    The Honorable Susan Illston |
| AND RELATED COUNTERCLAIMS. | |

**HSI'S MOT. FOR LEAVE TO AMEND**                                                                                         Case No. 3:06-CV-07477-SI

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND ............................................................................................................... 2

III.  ARGUMENT ..................................................................................................................... 6

     A.    Legal Standards .................................................................................................... 6

     B.    There is Good Cause to Amend HSI's Answer ...................................................... 7

     C.    There is Good Cause to Amend HSI's Preliminary Invalidity Contentions ........... 8

IV.  CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amersham Pharmacia Biotech, Inc. v. Perkin Elmer Corp.*,
  190 F.R.D. 644 (N.D. Cal. 2000) .................................................................................................. 6

*Bowles v. Reade*,
  198 F.3d 752 (9th Cir. 1999) ......................................................................................................... 6

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) .................................................................................................... 6, 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2002) ....................................................................................................... 6

*Foman v. Davis*,
  371 U.S. 178 (1962) ....................................................................................................................... 2

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  C03-1431-SBA, 2006 U.S. Dist. LEXIS 90856
  (N.D. Cal. May 15, 2006) ..................................................................................................... 6, 7, 9

*Sick A.G. v. Omron Sci. Techs., Inc.*,
  C06-2028-CW (MEJ), 2007 U.S. Dist. LEXIS 33818
  (N.D. Cal. April 24, 2007) ............................................................................................................ 9

*United States v. Webb*,
  655 F.2d 977 (9th Cir. 1981) ......................................................................................................... 6

**STATUTES**

35 U.S.C. § 102(b) .............................................................................................................................. 8

**RULES**

Civil L.R. 7............................................................................................................................................ 1

Fed. R. Civ. P. 15 ................................................................................................................................. 6

Fed. R. Civ. P. 15(a) ............................................................................................................................ 1

Fed. R. Civ. P. 15(a)(1) ....................................................................................................................... 6

Fed. R. Civ. Proc. 15(a)(2) .................................................................................................................. 2

Patent L.R. 2-2 ..................................................................................................................................... 3

Patent L.R. 3-3 ................................................................................................................................... 10

Patent L.R. 3-6 (Mar. 1, 2008) ........................................................................................................... 6

Patent L.R. 3-7 (Dec. 1, 2000) ................................................................................................ 1, 6, 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Health Services Integration, Inc. will and hereby does move the Court, pursuant to Fed. R. Civ. P. 15(a), Civil L.R. 7, and Patent L.R. 3-7 for leave to amend its Answer and Counterclaims to add specific allegations regarding unenforceability and for leave to supplement its Preliminary Invalidity Contentions to add allegations regarding further prior art recently identified and produced by Innovative Engineering relating to AeroMed Software and further 112 allegations based on statements recently made by Golden Hour.  This motion is currently set to be heard at 9:00 a.m. on Friday, June 27, 2008.

HSI's motion is based upon this Notice and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Heather N. Mewes ("Mewes Dec.") and Ken Stults ("Stults Dec.") in Support of HSI's motion, the pleadings and other papers on file with the Court in this matter, and such further argument and evidence which may be presented at or before a hearing.  A Proposed Order is also attached.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

HSI requests leave to file a First Amended Answer in order to specify additional allegations regarding unenforceability.  Golden Hour was aware of the prior art AeroMed Software product made by Innovative Engineering during prosecution, but made material misrepresentations regarding this prior art to the Patent Office during prosecution of U.S. Patent No. 6,117,073.  In addition, Golden Hour publicly distributed software embodying its patents more than one year before it filed an application for patent—and never told the Patent Office about these disclosures.  While HSI's Answer already includes an allegation that the '073 patent is unenforceable, HSI seeks leave to file a First Amended Answer to add specific allegations regarding this issue.

In addition, HSI requests leave to supplement its Preliminary Invalidity Contentions in light of further discovery primarily from Innovative Engineering and recent statements from Golden Hour that implicate the scope and content of the '073 patent.  While HSI's Preliminary

1

**HSI'S MOT. FOR LEAVE TO AMEND**                                                                                    Case No. 3:06-CV-07477-SI

Invalidity Contentions already identify two manuals published by Innovative Engineering relating to its AeroMed Software product and also disclosed that this product included a communications interface for automatically reading a patient's vital signs, Charles Freeman (owner of Innovative Engineering) has since produced further documents relevant to HSI's contentions. While HSI does not believe that supplementation is strictly necessary (particularly for any corroborating evidence or evidence of state of the art), in the interests of full disclosure and in an abundance of caution, HSI seeks leave to supplement its contentions. In addition, Golden Hour has recently taken positions in claim construction and in opposition to summary judgment which implicate still further section 112 problems with the '073 patent. HSI seeks leave to supplement its invalidity contentions to identify these further 112 issues. Proposed amendments are attached as Exhibits A and B to the Mewes Dec., with relevant new material underlined.

There is good cause for both amendments. This litigation is still in relatively early stages, and this request is made before the deadline for amendments set in the Court's Scheduling Order, before Markman, and before the deadline for Final Invalidity Contentions. Discovery remains open until at least October 9, 2008, and trial is not set until April 2009. HSI's request is also made in good faith and not as a delay tactic, and there can be no real prejudice to Golden Hour. Strong policy favors allowing parties to amend their pleadings, and allowing cases to be decided on their merits. *See, e.g.,* Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave when justice so requires."); *Foman v. Davis,* 371 U.S. 178, 181-82 (1962). Accordingly, HSI respectfully requests that the Court grant its motion for leave to amend.

## II.   BACKGROUND

This case was originally filed in December 2006. Dkt. # 1 (Complaint). In its complaint, Golden Hour asserted that HSI infringed the '073 patent. *Id.* HSI answered the complaint, denying Golden Hour's allegations, and asserting affirmative defenses of invalidity and unenforceability as well as corresponding counterclaims. Dkt. # 8 (Answer).

An initial case management conference was held on March 12, 2007. Dkt. # 14 (March 12, 2007 Civil Pretrial Minutes). In an effort to reach a quick resolution of this case, the Court ordered limited discovery targeted at liability and an early settlement conference. *Id.* It

2

**HSI'S MOT. FOR LEAVE TO AMEND**                                              Case No. 3:06-CV-07477-SI

specifically did not require Golden Hour or HSI to provide infringement or invalidity contentions at that time. *Id.* Plaintiff Golden Hour accordingly served discovery requests and took depositions regarding HSI's products, while HSI—consistent with the purpose of this initial limited discovery period—did not take any discovery on its own behalf. Stults Dec. ¶¶ 3-4. The parties agreed in June 2007 to postpone any other formal discovery and also to postpone filing a protective order (since HSI had already produced confidential documents pursuant to Patent L.R. 2-2). Mewes Dec. ¶ 5 & Ex. D. A settlement conference was held on August 29, 2007. *Id.* ¶ 6. However, the parties were not able to reach any agreement. *Id.*

Following the settlement conference, the parties proposed that discovery be fully opened and that they provide infringement and invalidity contentions according to the Patent Local Rules. Dkt. # 30 (Sept. 6, 2007 Update Joint Case Management Statement). The Court agreed, setting October 31, 2007 as Golden Hour's deadline for Preliminary Infringement Contentions and December 14, 2007 as HSI's deadline for Preliminary Invalidity Contentions. Dkt. # 31 (Sept. 14, 2007 Civil Pretrial Minutes) & Dkt. # 34 (Scheduling Order). The parties also took steps to enter a protective order. Golden Hour provided a draft protective order on October 11, 2007. Mewes Dec. ¶ 7 & Ex. E. HSI responded and proposed revisions to this draft the same day—but Golden Hour then took another three months to finalize the protective order. *Id.* Accordingly, no order was entered until January 17, 2008. Dkt. # 38.

The specification of the '073 patent describes a prior art product from Innovative Engineering that "provides computer software for dispatching emergency crews to accident scenes and managing flight information." '073 patent, col. 1:50-57. While Golden Hour claimed that this product did not have "comprehensive integration," HSI nonetheless sought to diligently investigate this issue. In particular, HSI contacted Charles Freeman (who owns Innovative Engineering) regarding AeroMed Software in July 2007 and requested that he provide documents relating to this software. Stults Dec. ¶ 6. Mr. Freeman agreed to do so, and these documents were then produced to Golden Hour in August 2007. *Id; see also* Mewes Dec. ¶ 8. This production included the two manuals for version 2.2 of the AeroMed Software—a Dispatch Module Reference Manual and a Flight Management Module Reference Manual. Mewes Dec.

3

**HSI'S MOT. FOR LEAVE TO AMEND**  Case No. 3:06-CV-07477-SI

¶ 8 & Ex. C. Mr. Freeman told HSI at this time that these were the only documents he had relating to this prior art product and that it was only by chance he had the manuals since a customer had returned them to him. Stults Dec. ¶ 6. Accordingly, HSI did not believe that further formal discovery from Mr. Freeman was likely to yield any further results.

Nothing in Mr. Freeman's August 2007 production indicated that subsequent versions of the AeroMed Software included a patient monitoring interface. Mewes Dec. ¶ 8. However, in December 2007 (shortly before its deadline for serving invalidity contentions), HSI learned from other sources that the AeroMed Software product was capable of automatically collecting a patient's information from emergency medical equipment. Mewes Dec. ¶ 9; Stults Dec. ¶ 7. Accordingly, HSI attempted to contact Mr. Freeman in early December 2007 to confirm this fact. Stults Dec. ¶ 7. However, Mr. Freeman did not respond to these requests at this time. *Id.*

Accordingly on December 14, 2007, HSI served its Preliminary Invalidity Contentions on Golden Hour based on its investigation to date. Mewes Dec. Ex. C. These contentions specifically identified Innovative Engineering's AeroMed Software as prior art, and cited two relevant manuals for version 2.2 of the software: the Dispatch Module Version 2.2 Reference Manual and the Flight Management Module Version 2.2 Reference Manual, both dating from 1992 or 1993. *Id.* at 3. In charts accompanying the contentions, HSI also set forth its specific contentions that "many charting modules (including AeroMed) had instructions that included a communication interface for automatically reading a patient's vital signs for many years prior to invention of any alleged inventions described in the patent-in-suit." *Id.* at Ex. 1, pp. 2, 5, 9. HSI also made clear that its "prior art search and other factual investigation are continuing," and that "HSI intends to conduct further investigation and third party discovery, including investigation and discovery with respect to prior art referenced herein and in the attached charts." *Id.* at 2.

After December 14, 2007, HSI continued its efforts to contact Mr. Freeman regarding the patient monitoring interface, and he finally responded on January 28, 2008. Stults Dec. ¶ 8. Mr. Freeman confirmed—consistent with HSI's contentions—that subsequent versions of the AeroMed Software product included a patient monitoring interface that he had developed in 1994. *Id.* Mr. Freeman for the first time also indicated that he may have additional relevant

4

HSI'S MOT. FOR LEAVE TO AMEND            Case No. 3:06-CV-07477-SI

documents describing the prior art AeroMed product, particularly in his accounting records. *Id.* Mr. Freeman agreed to search for these documents and provide copies to HSI. *Id.* ¶¶ 8-9. However, once Mr. Freeman had undertaken a more extensive search (including an in-depth search of closets, recycling boxes and other such repositories), he raised confidentiality objections regarding the production of these documents. *Id.* ¶ 10. Accordingly, counsel for HSI contacted Mr. Freeman regarding the protective order that had finally been put in place in January 2008. Mewes Dec. ¶¶ 11-12. After reviewing the protective order, Mr. Freeman finally agreed to produce these further documents, and they were produced in March 2008. *Id.* These documents disclosed for the first time a feature in subsequent versions of the AeroMed Software called a "comm server," which had the capability of automatically collecting transportation tracking information. Mewes Dec. ¶ 12. They also provided further information and corroboration of previously identified prior art, including the Propaq interface feature. *Id.*

As a result of HSI's motion for summary judgment (filed Feb. 28, 2008), Golden Hour also sought further discovery from Mr. Freeman and served a subpoena for documents and testimony on him. Mewes Dec. ¶ 13. In responding to this subpoena, Mr. Freeman identified still further documents, which were then produced to HSI and Golden Hour also in March 2008. *Id.* Mr. Freeman was deposed on April 6, 2008. *Id.* ¶ 14. At his deposition, Mr. Freeman produced for inspection a collection of disks with electronic copies of source code, AeroMed software and demonstrations. *Id.*

In opposition to HSI's motion for summary judgment, Golden Hour objected to all further discovery from Mr. Freeman, claiming that any use of this discovery was in violation of the Patent Local Rules. *Id.* ¶ 16; *see also* Dkt. # 62. In ruling on HSI's Motion, the Court found that "Plaintiff has failed to show that defendant violated the Patent Local Rules…" Mewes Dec. Ex. G at 4. When—in an abundance of caution—HIS sought agreement to nonetheless supplement its invalidity contentions to address Golden Hour's objections, Golden Hour refused to agree to any supplementation. *Id.* ¶ 17. The Court directed HSI to file this motion. *Id.*

## III. ARGUMENT

### A. Legal Standards

Federal Rule of Civil Procedure 15 requires the Court to grant leave to amend pleadings freely when justice so requires. *See* Fed. R. Civ. P. 15(a)(1). In exercising its discretion, "'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). This policy of granting motions to amend must be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2002).

Although leave to amend pleadings is not granted automatically, the reasons for denying such a motion are limited. *See Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). The Court should grant leave as long as there are no compelling circumstances such as bad faith on the part of the movant, substantial prejudice to the opposing party, or futility of amendment. *Bowles*, 198 F.3d at 757; *see also DCD Programs*, 833 F.2d at 186 ("delay, by itself, is insufficient to justify denial of leave to amend").

The Patent Local Rules provide that Preliminary Invalidity Contentions may be amended on a showing of "good cause" or as of right pursuant to Patent L-R 3-6, which governs Final Invalidity Contentions. *See* Patent L.R. 3-7 (Dec. 1, 2000).[1] The Patent Local Rules exist to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigation their cases. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, C03-1431-SBA, 2006 U.S. Dist. LEXIS 90856, *12 (N.D. Cal. May 15, 2006); *cf. also Amersham Pharmacia Biotech, Inc. v. Perkin Elmer Corp.*, 190 F.R.D. 644, 647-48 & n.5 (N.D. Cal. 2000) (granting motion for leave to amend invalidity chart after "consider[ing] whether a party's subsequent discovery of information previously unknown to it is excused under the circumstances"). Moreover, here too, courts are "strongly encouraged to decide issues pertaining

---

[1] The Northern District of California has since revised the Patent Local Rules, but these revised rules are effective for cases filed on or after March 1, 2008. The revised rules likewise allow for amendment upon a showing of good cause. *See* Patent L.R. 3-6 (Mar. 1, 2008). Examples of good cause include "recent discovery of material, prior art despite earlier diligent search. *Id.*

to invalidity when presented" and "fully adjudicate the case on its merits." *Fresenius*, 2006 U.S. Dist. LEXIS at *22.

### B. There is Good Cause to Amend HSI's Answer

HSI seeks leave to amend its answer to specify additional allegations regarding unenforceability. *See* Mewes Dec. Ex. A (Proposed First Amended Answer). HSI's answer already includes a general allegation of unenforceability. *See* Dkt. # 8. In addition, HSI has already disclosed to Golden Hour the basis for its unenforceability claim. *See, e.g.,* Dkt. # 30 at 3 ("As the inventors were aware of this prior art [the AeroMed Software] and failed to fully disclose it to the PTO, HSI believes that the '073 patent is both invalid and unenforceable."); Dkt. # 40 at 4 n.2 ("These same facts [about Golden Hour's misleading and incomplete disclosure regarding the AeroMed Software product] are the basis of HSI's inequitable conduct claims in this case as well as its request for attorneys' fees."); Mewes Dec. Ex. C (disclosing contention that Golden Hour sent copies of its software to potential beta test customers without restriction prior to the bar date). There is accordingly no reason for denying HSI's motion to amend.

There are no compelling circumstances of bad faith. Here, HSI discovered the AeroMed manuals in August 2007. Mewes Dec. ¶ 8. It was these manuals that made clear that Golden Hour's statements about the AeroMed Software product in the '073 patent were false and misleading. *Id.* At least by September 2007 (if not earlier), HSI disclosed to Golden Hour that it believed the '073 patent was unenforceable because Golden Hour had failed to fully disclose information about the AeroMed Software product to the PTO. *See, e.g.,* Dkt. #30. HSI further explicitly confirmed that its allegations related to inequitable conduct in its summary judgment motion. Dkt. # 40. Furthermore, Golden Hour did not produce documents detailing its pre-bar date sales until October 31, 2007. *See* Mewes Dec. ¶ 18. HSI now moves before the deadline for amendments to amend its pleadings to conform to these previously disclosed allegations.

There can also be no substantial prejudice to Golden Hour. HSI's original answer asserts unenforceability as both an affirmative defense and counterclaim and Golden Hour has been aware of HSI's specific inequitable allegations since at least September and December 2007.

7

**HSI'S MOT. FOR LEAVE TO AMEND**  Case No. 3:06-CV-07477-SI

Golden Hour has never moved to dismiss or strike HSI's answer and has never objected at any time to HSI's allegations of inequitable conduct.

Finally, amendment would not be futile. There is more than an adequate basis for HSI's claim of unenforceability. Golden Hour attempted to distinguish the AeroMed Software product during prosecution of the '073 patent as not providing "comprehensive integration." '073 patent, col. 1:55-57. In opposition to HSI's motion for summary judgment, in contrast, Golden Hour was forced to concede that the AeroMed Software manual described "integration" as claimed in the '073 patent. *See* Dkt. # 53. The inventors of the '073 patent must have either known that its statement about the AeroMed Software product was false or else recklessly disregarded the truth and mislead the Patent Office in making this statement without any basis. In addition, any public distribution by the patentee of a product embodying the claimed invention prior to the bar date is highly material to prosecution of a patent. *See* 35 U.S.C. § 102(b). Concealing such a highly material distribution amounts to an intent to deceive the Patent Office.

Finally, granting leave to amend would "facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs,* 833 F.2d at 186. HSI is merely conforming its answer to allegations that are already in this case. Leave should be freely given to amend.

### C. There is Good Cause to Amend HSI's Preliminary Invalidity Contentions

There is also good cause to amend HSI's Preliminary Invalidity Contentions. *See* Mewes Dec. Ex. B (Proposed First Amended Preliminary Invalidity Contentions). HSI's amendments relate principally to recent discovery obtained from a third party—Charles Freeman—in February and March 2008. *Id.* ¶¶ 10-12. The other amendments relate to recent statements and positions taken by Golden Hour in April 2008. *Id.* ¶ 15. Both came after the deadline for HSI's Preliminary Invalidity Contention on December 14, 2007. *See* Dkt. # 34.

There is no prejudice to Golden Hour in allowing amendment. HSI's contentions already identified the AeroMed Software as prior art, and thus served the purpose of putting Golden Hour on notice. *See* Mewes Dec. Ex. C at 3 (exhibits 1-2). In charts accompanying these contentions, HSI further detailed its contentions, including disclosing that the AeroMed software was used with a communication interface for automatically reading a patient's vital signs. *Id.* at Ex. 1,

8

pp. 2, 5, 9. Golden Hour has had a full and fair opportunity to conduct discovery regarding this prior art. It subpoenaed and deposed Mr. Freeman in March and April 2008. Mewes Dec. ¶¶ 13-14. And, in any case, Markman is not scheduled until July 2, 2008, final invalidity contentions are not due until September 1, 2008, and fact discovery remains open through at least October 9, 2008, with expert reports due thereafter—there is ample time for Golden Hour to conduct still further discovery should it desire to do so. Dkt. # 34.

These are circumstances similar to (if not more compelling than) the facts in *Fresenius*. There, the relevant prior art was disclosed in final invalidity contentions, but the defendant did not allege anticipation regarding this prior art. *Fresenius*, 2006 U.S. Dist. LEXIS at *19-22. The defendant later learned further facts about the prior art indicating that it was actually anticipating and disclosed these facts to plaintiff. *Id.* However, the defendant did not ever move to supplement its invalidity contentions, and plaintiff moved to strike the anticipation defense. *Id.* The Court denied plaintiff's motion, finding that the underlying goals of full and timely discovery and adequate notice had not been thwarted, particularly given that the parties had conducted discovery on the issue and had briefed the issue in summary judgment. *Id.* In this case, there are similar circumstances, except that HSI has diligently moved to amend its contentions and its motion to amend comes far earlier in the litigation, before discovery has closed and before expert reports. *See, e.g., Sick A.G. v. Omron Sci. Techs., Inc.*, C06-2028-CW (MEJ), 2007 U.S. Dist. LEXIS 33818, * 2-3 (N.D. Cal. April 24, 2007) (finding good cause for amendment of preliminary invalidity contentions where revised contentions were served months before close of discovery and claim construction and references were recently discovered).

Golden Hour's only real objection to supplementation of HSI's invalidity contentions is the assertion that HSI should have discovered this information before December 2007. However, HSI was diligent in its efforts. First, although this case was filed in December 2006, the Court ordered only limited discovery and the parties worked diligently towards a settlement conference in August 2007, which was ultimately unsuccessful. Stults Dec. ¶¶ 3-5. Given the purpose of this limited discovery focused on HSI's products, it was reasonable for HSI to not serve formal discovery on a third party during this 9 month period—indeed, the parties themselves agreed in

9

HSI'S MOT. FOR LEAVE TO AMEND      Case No. 3:06-CV-07477-SI

1 June 2007 to forego further formal discovery requests. Mewes Dec. ¶ 5 & Ex. D.

2 Moreover, HSI was diligent in contacting Mr. Freeman and obtaining documents from him relating to the AeroMed Software product. *See* Stults Dec. ¶ 6. HSI requested and Mr. Freeman agreed to provide these documents on a voluntary basis in July and August 2007 (long before HSI's deadline for serving invalidity contentions), obviating the need for a formal discovery request. *Id.* Mr. Freeman also told HSI that he did not have other documents relevant to the prior art in his possession and HSI thus has no reason to ask him for more documents. *Id.* Nonetheless, upon learning additional information about the prior art AeroMed Software from other sources, HSI again attempted to contact Mr. Freeman in December 2007 to confirm its understanding. *Id.* ¶ 7. Mr. Freeman did not respond to these requests until late January 2008 and it was only after that that Mr. Freeman realized he may have more documents. *Id.* ¶¶ 7-10. However, Mr. Freeman also then raised confidentiality objections to the production of these documents and most were not produced until March 2008. *Id.* All documents produced by Mr. Freeman were produced to Golden Hour on a timely basis. Mewes Dec. ¶¶ 8, 10, 12, 13.

HSI also asks for leave to amend its contentions to respond to newly raised issues by Golden Hour. In its opposition to HSI's motion for summary judgment, Golden Hour argued for the first time that the disclosure in the AeroMed manuals was not enabling—despite the fact that it is similar to the disclosure in the '073 patent. Mewes Dec. ¶ 15. Golden Hour also argued for the first time that the claims required the automatic collection of transportation tracking information—again, despite the fact that the '073 patent does not describe this process. *Id.* HSI's supplemental contentions directly address these new arguments.

During the summary judgment proceedings, Golden Hour raised numerous objections to HSI's citation of corroborating evidence and evidence of the state of the art not otherwise cited in HSI's invalidity contentions. *See* Dkt. # 64. However, the Court overruled Golden Hour's objections and found that HSI had not violated the Patent Local Rules. *See* Dkt. # 65.[2] There is

---

[2] Consistent with this ruling, HSI does not believe that it is necessary or required under the Patent Local Rules to identify corroborating evidence or evidence of the state of the art. *See* Patent L.R. 3-3. To the extent that such evidence is identified in HSI's supplemental preliminary invalidity contentions, HSI expressly reserves the right to use such evidence for these purposes.

10

**HSI'S MOT. FOR LEAVE TO AMEND**             Case No. 3:06-CV-07477-SI

no requirement under the Patent Local Rules for defendants in patent cases to conduct all discovery on prior art, including third party discovery, before serving preliminary invalidity contentions (usually 55 days after the initial case management conference).  The Patent Local Rules themselves acknowledge that preliminary invalidity contentions may be amended and/or supplemented for good cause.  *See* Patent L-R 3-7.  Such a requirement would also be bad policy.  It would be virtually impossible for defendants to conduct such discovery in time, particularly where there are third party confidentiality concerns as there were here.

The Patent Local Rules served their purpose in this case and put Golden Hour on notice of the AeroMed prior art.  HSI makes the present motion in an abundance of caution and in the interest of full disclosure.  HSI has been diligent and there is no possible prejudice to Golden Hour in these circumstances—Golden Hour is instead seeking to capitalize on technicalities in the rules and avoid any decision on the merits.  However, there is good cause for allowing HSI's supplemental invalidity contentions and public policy favors decision on the merits.

## IV.   CONCLUSION

Based on the foregoing, HSI respectfully requests that the Court grant leave to amend both HSI's Answer and its Preliminary Invalidity Contentions.

Dated: May 23, 2008                                       FENWICK & WEST LLP

By: /s/ Heather N. Mewes

Attorneys for Defendant
HEALTH SERVICES INTEGRATION, INC.