Frederick S. Berretta (State Bar No. 144,757)
Boris Zelkind (State Bar No. 214, 041)
Phillip A. Bennett (State Bar No. 241,809)
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street, Suite 1200
San Diego, CA  92101
(619) 235-8550
(619) 235-0176 (FAX)

Attorneys for Plaintiff
GOLDEN HOUR DATA SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLDEN HOUR DATA SYSTEMS, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>HEALTH SERVICES INTEGRATION, INC., a California corporation,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. C 06-7477 SI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND PRELIMINARY INVALIDITY CONTENTIONS**<br><br>Date:  July 2, 2008<br>Time:  3:30 p.m.<br>Courtroom 10<br><br>The Honorable Susan Illston |

# **TABLE OF CONTENTS**

Page #s

I.      INTRODUCTION..................................................................................................1

II.     THE COURT SHOULD NOT ALLOW HSI TO AMEND ITS
        ANSWER TO INCLUDE FUTILE ALLEGATIONS OF
        INEQUITABLE CONDUCT ..................................................................................2

        A.      HSI's New Allegations...............................................................................2

        B.      Applicable Legal Standards.........................................................................3

        C.      HSI's Proposed Amendments Would Be Futile.....................................................3

                1.      The Allegations Related to the AeroMed Software
                        Product Would Be Defeated on Summary Judgment...............................3

                2.      The Allegations Related to Five Documents
                        Submitted During Prosecution of U.S. App. Ser.
                        No. 10/007,642 are Demonstrably False, and Even
                        If They Were True, Do Not Support a Finding of
                        Inequitable Conduct ...........................................................9

                3.      The Allegations Related to Prior Beta Testing,
                        Even If True, Are Not Material Under Federal
                        Circuit Precedent ..............................................................11

III.    HSI HAS FAILED TO SHOW GOOD CAUSE TO AMEND ITS
        INVALIDITY CONTENTIONS ...........................................................................13

        A.      Applicable Legal Standards.......................................................................13

        B.      HSI Should Not Be Permitted To Introduce New
                Allegations Based On Evidence Belatedly Obtained From
                Charles Freeman...................................................................................13

                1.      HSI Was Always Able to Obtain Documents and
                        Information From Charles Freeman Well Before Its
                        Invalidity Contentions Were Due.............................................14

                2.      Golden Hour Would Be Prejudiced.........................................16

        C.      From The Time This Case Was Filed, HSI Possessed All
                Of The Information It Needed To Develop Its Theories
                Regarding Enablement ...........................................................................17

IV.     CONCLUSION ..................................................................................................20

Opposition to HSI's Motion to Amend
Civil Action No. C-06-7477 SI

# **TABLE OF AUTHORITIES**

**Page #s**

*Ferguson Beauregard/Logic Controls Div. of Dover Resources, Inc. v.*
 *Mega Sys. LLC,*
  350 F.3d 1327 (Fed. Cir. 2003) ............................................................... 3, 4

*Fiskars Inc. v. Hung Mfg. Co.,*
  221 F.3d 1318 (Fed. Cir. 2000) ............................................................... 4, 9

*Foman v. Davis,*
  371 U.S. 178 (1962) ................................................................................. 3

*Gabrielson v. Montgomery Ward & Co.,*
  785 F.2d 762 (9th Cir. 1986) ................................................................... 3

*IXYS Corp. v. Advanced Power Technology, Inc.,*
  2004 WL 1368860 (N.D. Cal. 2004) .......................................... 14, 15, 16

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,*
  863 F.2d 867 (Fed.Cir. 1988) .................................................................. 3

*LG Elecs. Inc. v. Q-Lity Computer Inc.,*
  211 F.R.D. 360 (N.D.Cal. 2002) ............................................................. 13

*Monon Corp. v. Stoughton Trailers,*
  239 F.3d 1253 (Fed. Cir. 2001) ............................................................... 12

*Norian Corp. v. Stryker Corp.,*
  363 F.3d 1321 (Fed. Cir. 2004) ............................................................... 8

*Northern Telecom, Inc. v. Datapoint Corp.,*
  908 F.2d 931 (Fed. Cir. 1990) ................................................................. 18

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
  467 F.3d 1355 (Fed. Cir. 2006) ............................................................... 13

*Reactive Metals & Alloys Corp. v. ESM, Inc.,*
  769 F.2d 1578 (Fed. Cir. 1985) ......................................................... 11, 12

*Texaco v. Ponsoldt,*
  939 F.2d 794 (9th Cir. 1991) ................................................................... 3

**TABLE OF AUTHORITIES**
(Cont'd.)

Page #s

**OTHER AUTHORITIES**

35 U.S.C. § 102 .................................................................................................... 11

37 C.F.R. § 1.56 ............................................................................................... 4, 5, 6

37 C.F.R. § 1.97 ............................................................................................... 4, 5, 6

37 C.F.R. § 1.98 ...............................................................................................4, 5, 6

Fed. R. Civ. P. 9(b).................................................................................................. 4

Opposition to HSI's Motion to Amend
Civil Action No. C-06-7477 SI

## I. **INTRODUCTION**

In this lawsuit Golden Hour Data Systems, Inc. ("Golden Hour") asserts that Health Services Integration, Inc. ("HSI") infringes United States Patent No. 6,117,073 ("the '073 patent"), entitled "Integrated Emergency Medical Transportation Database System," and assigned to Golden Hour. In its Motion filed on May 23, 2008, HSI seeks leave from the Court to amend its Answer to allege inequitable conduct and to amend its Preliminary Invalidity Contentions to include evidence it could have disclosed long ago. The Court should not allow HSI's proposed amendments.

Allowing HSI to amend its pleadings to include new allegations of inequitable conduct would be futile because none of the new allegations could survive at summary judgment. The patent applicants told the Patent Office Examiner about the AeroMed software; nothing was hidden. Moreover, the inequitable conduct allegations included in the proposed amended answer are based on various allegations that are demonstrably false. As but one example, HSI erroneously alleges that a PTO-1449 form was required to avoid inequitable conduct, but this is not true under the applicable rules. HSI's failure to ascertain these types of easily verifiable facts prior to moving to amend demonstrates that the amendments are not made in good faith. There is no new evidence alleged upon which to base the amendments. All the new allegations could have been made well before HSI's invalidity contentions were due back in 2007. The proffered amendments are untimely and futile, and should be rejected.

HSI also fails to demonstrate good cause to amend its invalidity contentions. Unlike in most cases, HSI had over a year to discover and prepare its Patent Local Rule contentions. For example, HSI seeks leave to amend its invalidity contentions based on information and documents recently obtained from Charles Freeman. HSI knew about Mr. Freeman very early in this lawsuit, and even admits that it was in communication with him as early as July 2007. HSI attempts to excuse its disclosure failures by blaming Mr. Freeman, a third party, for lack of diligence, but Mr. Freeman testified that he was always happy to help and HSI just failed to follow-up. When HSI finally did ask Mr. Freeman for all his documents in March of this year he quickly provided them with everything they requested. Moreover, HSI could have

1  subpoenaed Mr. Freeman if he was not being responsive.  In fact, HSI just dropped the ball and

2  has only itself to blame.

3      HSI also seeks leave to add contentions related to enablement of the '073 patent, but

4  offers no justifiable excuse for failing to do so sooner.  Its only excuse for the delay is that it

5  did not think of enablement until Golden Hour raised issues of enablement with respect to the

6  alleged prior art in response to HSI's summary judgment motion.  That HSI may have

7  overlooked a possible legal theory does not constitute good cause.

8      HSI's other excuses are also red herrings and distort the facts.  As the Court may recall,

9  the protective order in this case was delayed because HSI's former counsel unreasonably

10  refused to even discuss it.  HSI then replaced its counsel.  But even those delays did not prevent

11  HSI from timely obtaining Mr. Freeman's documents.  Also, whatever agreements the parties

12  may have reached regarding discovery requests and responses, Golden Hour never agreed to

13  excuse HSI's disclosure obligations under the Patent Local Rules.

14      Despite having much more time than most patent defendants, HSI failed to investigate,

15  gather and disclose its evidence in a timely manner.  Vague and general invalidity contentions

16  do not function as a placeholder for proper disclosure.  HSI's arguments, if accepted, would

17  effectively nullify the rules and allow any defendant to amend its contentions whenever the

18  defendant gets around to it or dreams up a new legal theory.  HSI has failed to demonstrate

19  good cause for its tardiness and its Motion should be denied.

20  **II.  THE COURT SHOULD NOT ALLOW HSI TO AMEND ITS ANSWER TO**

21  **INCLUDE FUTILE ALLEGATIONS OF INEQUITABLE CONDUCT**

22  **A.  HSI's New Allegations**

23      In its proposed amended complaint, HSI appears to allege three acts of inequitable

24  conduct.  The first alleged act of inequitable conduct relates to an alleged failure to disclose the

25  AeroMed Software product during the prosecution of the '073 patent.  The second alleged act

26  of inequitable conduct relates to an alleged failure to disclose, during prosecution of the '073

27  patent, five documents that were disclosed in a later filed application.  The third alleged act of

28  inequitable conduct relates to the alleged public use and distribution of software more than one

1  year prior to the filing date of the '073 patent.  None of these allegations is legally sufficient to

2  make out a case of inequitable conduct.

3  **B.**      **Applicable Legal Standards**

4        Leave to amend is a procedural matter not unique to patent law, and therefore the law of

5  the regional circuit, in this case the Ninth Circuit, is properly applied.  *See Ferguson*

6  *Beauregard/Logic Controls Div. of Dover Resources, Inc. v. Mega Sys. LLC*, 350 F.3d 1327,

7  1342 (Fed. Cir. 2003).  Leave to amend is freely given unless (1) there is undue delay, (2) the

8  amendment is sought in bad faith, (3) the amendment is futile, or (4) the opposing party would

9  be unduly prejudiced. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Texaco v. Ponsoldt*, 939 F.2d

10  794, 798 (9th Cir. 1991). An amendment is futile if it could be defeated on summary judgment.

11  *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

12  **C.**      **HSI's Proposed Amendments Would Be Futile**

13        Establishing inequitable conduct for failure to disclose information to the PTO during

14  the prosecution of a patent application requires proof by clear and convincing evidence of two

15  facts: that the applicant failed to disclose material information, or submitted false material

16  information, and that he acted with intent to deceive. *Kingsdown Med. Consultants, Ltd. v.*

17  *Hollister, Inc.*, 863 F.2d 867, 872 (Fed.Cir.1988) (en banc).  An accused infringer must show

18  by clear and convincing evidence that the patentee intended to deceive the PTO. *Id.*  HSI's

19  proffered amendments are each futile because they rely on factual assertions that are

20  demonstrably false, and they could not survive a motion to dismiss or a motion for summary

21  judgment.

22        **1.**      **The Allegations Related to the AeroMed Software Product Would Be**

23            **Defeated on Summary Judgment**

24            **a.**      **The '073 Patent Applicant Disclosed the AeroMed Software to the**

25              **Patent Office**

26        HSI alleges that the inventors of the '073 patent committed inequitable conduct because

27  "GH knowingly, willfully, and with the intent to deceive the USPTO, withheld the operational

28  details of the AeroMed Software product … and to the extent the AeroMed Software product

Opposition to HSI's Motion to Amend
Civil Action No. C 06-7477 SI

1   was disclosed, GH knowingly, willfully and with the intent to deceive the USPTO,

2   misrepresented to the USPTO the capabilities of the AeroMed Software in the '073 patent at

3   col. 1, lns. 50-57, in its effort to obtain broad claims for which GH knew it was not entitled."

4   Mewes Dec., Exhibit A at 5-6.

5       As an initial matter, "GH," assuming that means Golden Hour, is not an inventor of the

6   '073 patent, nor was the patent application assigned to Golden Hour during prosecution of the

7   '073 patent.  Berretta Dec., Ex. A (2003 assignment).  Thus, HSI has failed to allege with the

8   requisite specificity precisely who associated with the prosecution of the '073 patent it is

9   actually accusing of inequitable conduct.  *Ferguson Beauregard/Logic Controls*, 350 F.3d at

10  1343-1344 (inequitable conduct must be pled with specificity under Rule 9(b) of the Federal

11  Rules of Civil Procedure).  Such vague and unspecified allegations do not support a finding of

12  inequitable conduct.

13      Importantly, the Federal Circuit has held that "[a]n applicant's citation of prior art in

14  accordance with the rules of the PTO precludes a finding of withholding of that prior art with

15  deceptive intent."  *Fiskars Inc. v. Hung Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000).  In an

16  information disclosure statement ("IDS") filed on August 7, 1998, the Applicants disclosed

17  their awareness of the AeroMed Software.  Berretta Dec., Ex. B.  The Patent Office Rules in

18  effect at the time the IDS was filed state that Applicants have a "duty to disclose to the Office

19  all information known to that individual to be material to patentability."  37 C.F.R. § 1.56

20  (1998).  Berretta Dec., Ex. C.  The Rules further state that "[t]he duty to disclose all

21  information known to be material to patentability is deemed to be satisfied if all information

22  known to be material to patentability of any claim issued in a patent was cited by the Office or

23  submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98." *Id.* (emphasis

24  added).

25      Section 1.98, as in force at the time of the IDS filing, stated the requirements for filing

26  an IDS as follows: (a) Any information disclosure statement filed under § 1.97 shall include:

27              (1) A list of patents, publications, or other information submitted
                for consideration by the Office;

28

-4-

(2) A legible copy of: (i) Each U.S. and foreign patent; (ii) Each publication or that portion which caused it to be listed; and (iii) All other information or that portion which caused it to be listed, except that no copy of a U.S. patent application need be included; and

(3) A concise explanation of the relevance, as it is presently understood by the individual designated in §1.56(c) most knowledgeable about the content of the information, of each patent, publication, or other information listed that is not in the English language.   The concise explanation may be either separate from the specification or incorporated therein."

37 C.F.R. § 1.98 (1998).  The IDS filed on behalf of the inventors of the '073 patent complied with each requirement of Section 1.98.   Section 1.98(a)(1) required that the information disclosure statement include a list of all patents, publications, or other information submitted for consideration by the office.   The IDS filed on August 7, 1998 included three pages. Berretta Dec., Ex. B.   The three pages included first and second pages which listed the Applicant's awareness of the AeroMed software. *Id.* at 1-2.   The third page was a Form PTO-1449 which listed other U.S. Patent references.   *Id.* at 3.   The Form PTO-1449 included sections for (1) U.S. Patent Documents; (2) Foreign Patent Documents; and (3) Other Documents.   Notably, Form PTO-1449 did not include a section for listing non-document materials.   Because the Form PTO-1449 did not include a section for listing non-document materials, the Applicant properly listed the AeroMed software separately in the first two pages of the Information Disclosure Statement.   Because the AeroMed software was listed in the Information Disclosure Statement, the Applicant complied with section 37 C.F.R. § 1.98(a)(1).

HSI's amended complaint alleges that Form PTO-1449 was a "required form," suggesting that the failure to list the AeroMed software on that form was somehow a basis for finding inequitable conduct.   As a purely legal matter, neither Form PTO-1449 nor any other specific form is required to comply with 37 C.F.R. §§ 1.56, 1.97 and 1.98.   In fact, when the USPTO updated their rules governing information disclosure statements in 2004, the Official Gazette Notice describing the changes explicitly noted that old rules (e.g., the 1998 version of 37 CFR), "did not require the use of a form such as the PTO/SB/08A and 08B."   See 69 F.R. 56481, 56510. Berretta Dec., Ex. D.

1    The Applicant also met the legible copy requirement of 37 C.F.R. § 1.98(a)(2), by filing

2   legible copies of "[e]ach U.S. and foreign patent," and "all other information or that portion

3   which caused it to be listed." See 37 C.F.R. § 1.98(a)(2)(i) and (iii). There is no dispute that

4   the Applicant submitted legible copies of each of the patents listed on the Form PTO-1449 and

5   thus satisfied subsection (i). Further, the Applicant also submitted, in legible form, "all other

6   information," which consisted of Applicant's awareness of the AeroMed software and a

7   description thereof in the first two pages of the IDS. Berretta Dec., Ex. B at 1-2.

8    Lastly, the Applicant met the requirement of 37 C.F.R. §1.98(a)(3) by providing a

9   concise explanation of the relevance of the AeroMed software as understood at that time. In

10  particular, the Applicant disclosed that the AeroMed software was "computer software for Air

11  Medical Dispatch, Flight Program Management, Medical Charting, Continuing Education

12  Tracking, Transfer Center, Physician's Referral Lines, and Customer Applications." Berretta

13  Dec., Ex. B at 1-2. The Applicant also included specific information about the company that

14  sold the software, stating that "AeroMed Software is a product of Innovative Engineering of

15  Lebanon, New Hampshire." Id. By additionally providing information about the company

16  offering the software, the Applicant went beyond the requirement of the rule and even told the

17  Examiner who to contact for additional information about the software.

18   As noted above, 37 C.F.R. § 1.56 states that the "duty to disclose all information known

19  to be material to patentability is deemed to be satisfied if all information known to be material

20  to patentability of any claim issued in a patent was cited by the Office or submitted to the

21  Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98." Because the Applicant submitted

22  information about the AeroMed software in the manner prescribed by §§ 1.97(b)-(d) and 1.98,

23  the Applicant's duty of disclosure with respect to the AeroMed software was satisfied. Before

24  a court even considers issues of materiality and intent in an inequitable conduct determination,

25  a threshold showing must first be made that something was in fact withheld from the patent

26  office. As the Applicant satisfied its duty of disclosure with respect to the AeroMed software,

27  any allegations of inequitable conduct based on the AeroMed software cannot be sustained as a

28  matter of law and would thus be defeated on summary judgment.

b.   **Even If the AeroMed Software Was Not Fully Disclosed, Summary Judgment of No Inequitable Conduct Would be Appropriate**

As explained above, the inventors of the '073 patent met their legal duty of disclosure with respect to the AeroMed software by filing an IDS which disclosed the software in the manner prescribed by the patent office rules. HSI's failure to overcome this threshold issue renders the allegations of inequitable conduct based on the AeroMed software legally unsustainable. Nevertheless, even if the disclosure of the AeroMed Software in the IDS were found not to have fully satisfied the inventors' duty of disclosure, the allegations made in HSI's amended answer could not support a finding of inequitable conduct with respect to the AeroMed software.

HSI's inequitable conduct allegation appears to take the position that even if the AeroMed Software product was properly disclosed to the patent office, the description of AeroMed Software provided in the '073 patent specification misrepresented the capabilities of the AeroMed software with an intent to deceive the USPTO. There are several fundamental flaws in this allegation. First, HSI has not shown that the statement in the '073 patent specification is actually false. It only presents attorney argument on that point.

Second, the description of the AeroMed Software that appeared in the patent specification was based on the applicants' understanding of the product at that time, and HSI has no evidence to the contrary. For example, despite taking the deposition of Mr. Freeman and finally getting documents from him, HSI still has no evidence that the '073 patent applicants were in possession of any information or manuals about the AeroMed software when they prosecuted the '073 patent. Even with the desperate urging of HSI's counsel, Mr. Freeman could not testify that he ever provided any manuals or demonstration software to Golden Hour or its inventors while they were working at U.C.S.D. Life Flight. Berretta Dec., Ex. E at 56 (Freeman Dep.). This is hardly surprising because Mr. Freeman even today is very cautious about allowing competitors access to information about his software. Thus, even if the description of the AeroMed software in the patent were ultimately determined to be inaccurate, there is no evidence that the inaccuracy was intentional.

1    The Federal Circuit has held in these types of situations that inequitable conduct is not

2  established by a misstatement made during prosecution.  The case of *Norian Corp. v. Stryker*

3  *Corp.*, 363 F.3d 1321 (Fed. Cir. 2004) is instructive on this point.  *Norian* involved a patent

4  infringement case in which the attorney who prosecuted the patent in suit made statements to

5  the examiner which "appeared to be inaccurate." *Id.* at 1331.  Before the district court, the

6  defendant argued that the erroneous statement to the examiner constituted inequitable conduct.

7  *Id.*  The district court granted summary judgment of no inequitable conduct, holding that

8  deceptive intent was not established by clear and convincing evidence. *Id.*  On appeal, the

9  Federal Circuit affirmed, stating that "[w]e agree that a genuine issue as to deceptive intent

10 ha[s] not been established, thereby precluding a ruling of inequitable conduct." *Id.*

11   In this instance, the situation parallels *Norian* in that even taking as true the allegation

12 that the capabilities of AeroMed Software product were misrepresented in the patent

13 specification, the requisite intent to deceive is not established.  Indeed, the facts in this case

14 even more strongly favor a finding of no inequitable conduct because the alleged misstatement

15 appeared only in the "background of the invention" section as a general statement of problems

16 in the prior art, and the statement was not used to overcome a rejection as was the case in

17 *Norian.*

18   In its opening brief, HSI argues that "[t]he inventors of the '073 patent must have either

19 known that its statement about the AeroMed Software product was false or else recklessly

20 disregarded the truth and mislead the Patent Office in making this statement without any basis."

21 HSI's Motion at 8.  However, this argument ignores a third possibility: that the inventors were

22 neither reckless nor deceptive, and instead just simply made a mistake.  The *Norian* case

23 properly recognizes that in these types of situations, it takes more than a mere allegation

24 (which, in this case, is all that HSI has) to establish inequitable conduct.  Further, to the extent

25 that any mistake was made about the capabilities of AeroMed as described in the specification,

26 its effects on the prosecution were mitigated by the applicants informing the Examiner in an

27 IDS of the existence and location of the AeroMed software, thereby inviting the Examiner to

28 research the matter further.

Opposition to HSI's Motion to Amend
Civil Action No. C 06-7477 SI

1    Additionally, the Federal Circuit has held that "[a]n Applicant cannot be guilty of

2  inequitable conduct if the reference was cited to the examiner, whether or not it was a ground

3  of rejection by the examiner." *Fiskars Inc. v. Hung Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir.

4  2000).   It is not disputed that the AeroMed Software was cited to the examiner during

5  prosecution of the '073 patent. See Mewes Dec., Ex. B at 5, lines 3-10. Accordingly, under

6  *Fiskars*, the applicant cannot be guilty of inequitable conduct, because the effect of any

7  misstatement in the specification was cured by the subsequent filing of the IDS.

8    In sum, the applicants satisfied their duty of disclosure to the PTO by listing the

9  AeroMed software in an IDS and telling the Examiner where to get further information about

10  it.   This cannot constitute inequitable conduct as a matter of law and so HSI's proposed

11  amendment is futile.

12    **2.    The Allegations Related to Five Documents Submitted During Prosecution**

13      **of U.S. App. Ser. No. 10/007,642 are Demonstrably False, and Even If They**

14      **Were True, Do Not Support a Finding of Inequitable Conduct**

15    HSI seeks to amend its Answer to include allegations that "[o]n information and belief,

16  GH knowingly, willfully, withheld the existence of five other documents cited during

17  prosecution of related Application Serial No. 10/007,642 from the USPTO." This amendment

18  to HSI's answer would also be futile because it is based on demonstrably false allegations, and

19  could not survive a motion for summary judgment.

20    HSI alleges in its proposed amended answer that "GH has identified United States

21  Patent Application Serial No. 10/007,642, filed November 6, 2001, which names the same two

22  inventors as named in the '073 patent-in-suit, as a patent application that is a counterpart of,

23  claims priority to or from, or relates to the '073 patent-in-suit." Mewes Dec. Exhibit A at 5,

24  lines 14-17.   This statement is not true.   U.S. Application No. 10/007,642 ("the '642

25  application") is not a counterpart of, nor claims priority to or from, nor relates to the '073

26  patent. The '642 application recently issued as U.S. Patent No. 7,233,905 ("the '905 patent").

27  Berretta Dec. Ex. F (the '905 patent). A review of the '905 patent reveals that (1) it was filed

28  months after the '073 patent issued; and (2) it does not claim priority or identify any

-9-

1  relationship to the '073 patent (although it does incorporate the '073 patent by reference).  *Id.*

2  HSI's argument based upon an alleged relationship between the '073 and '905 patents is

3  frivolous.

4        HSI further alleges:

5           l) In an IDS filed during proceedings at the USPTO for
            Application Serial No. 10/007,642, inventors Hutton and Jones,
6           by and through their attorney, identified six "non-patent literature
            documents," including "www.aeromed-software.com."  Five of
7           these six documents were listed by inventors Hutton and Jones
            through their attorney has having publication dates more than one
8           year prior to the effective filing date of the '073 patent-in-suit.
            The website www.aeromed-software.com was given a date of
9           February 5, 1998, about one month prior to the effective filing
            date of the '073 patent-in-suit.
10
            m) None of the six documents listed in the IDS of related Patent
11          Application Serial No. 10/007,642 were disclosed to the USPTO
            during the pendency of the '073 patent-in-suit.
12

13  See Mewes Dec. Ex. A at 5, lines 18-26.  On the basis of these facts, HSI alleges that Golden

14  Hour committed inequitable conduct by withholding "the existence of the five other documents

15  cited during prosecution of related Application Serial No. 10/007,642."  Mewes Dec. Ex. A at

16  5-6.

17        Even if each of the facts above is taken as true, HSI has not stated a colorable claim that

18  Golden Hour committed inequitable conduct, as it fails to even allege that the documents in

19  question were within the possession, custody, or control of Golden Hour during the time the

20  '073 patent was pending.  As noted above, the '642 application was not filed until November 6,

21  2001, almost 14 months after the '073 patent issued.  Thus, even if it is true that Golden Hour

22  did not disclose documents from the '642 patent application in the '073 patent, it can only be

23  inequitable conduct if those documents were material, possessed by Golden Hour during the

24  prosecution of the '073 patent, and withheld with intent to deceive.  HSI makes no such

25  allegation and as a result has not stated a colorable claim of inequitable conduct as to the

26  references disclosed in the '642 application.

27        Moreover, even if its amended pleading had stated a claim of inequitable conduct, any

28  such claim would be easily defeated on summary judgment.  As discussed above, HSI makes

-10-

1    no allegation that Golden Hour was in possession of the "non patent literature" documents

2    while the '073 patent was pending before the Patent Office.  The IDS referred to in HSI's

3    amended answer was filed on June 28, 2006.  Berretta Dec., Ex. G (copy of IDS in '642

4    application).    Five of the six non patent literature documents (including "www.aeromed-

5    software.com") are printouts of web pages which were generated on April 29, 2003.  Berretta

6    Dec., Ex. H.  Thus, the documents themselves indicate that Golden Hour did not have them in

7    its possession prior to the issuance of the '073 patent in September 2000.  Because Golden

8    Hour did not possess the documents while the '073 patent was pending, its failure to disclose

9    the documents cannot be inequitable conduct.    Accordingly, HSI's proposed amendments

10   related to the '642 patent application would also be futile.

11          Moreover, none of these allegations are based on new information or discovery that was

12   not available sooner.  All of the facts related to these allegations have been matters of public

13   record since June 2007 when the '905 patent issued, so do not warrant a last minute pleading

14   amendment.  Again, HSI has failed to demonstrate good cause for its unreasonable delays, and

15   its proposed amendments are futile in any event.

16          **3.      The Allegations Related to Prior Beta Testing, Even If True, Are Not**

17                  **Material Under Federal Circuit Precedent**

18          HSI also seeks to introduce allegations of inequitable conduct relating failing to

19   disclose alleged public distribution or use of software more than one year before the filing date

20   of the '073 patent.  See Mewes Dec. Ex. A at 6, lines 6-18.  As with each of the other

21   inequitable conduct allegations, introduction of these allegations into the case at this stage

22   would be futile because the alleged public use, even if taken as true, amounts only to

23   experimental use, and experimental use need not be disclosed to the Patent Office.

24          In *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578 (Fed. Cir. 1985), the

25   Federal Circuit held that an applicant need not disclose pre-filing date activities if they are

26   experimental in nature.    769 F.2d at 1583.    *Reactive Metals* involved an allegation of

27   inequitable conduct based on the failure to disclose sales of the patented invention that took

28   place prior to the 35 U.S.C. § 102(b) critical date.  The district court held that failure to disclose

-11-

1   the prior sales activity to the Patent Office constituted inequitable conduct.  The Federal Circuit

2   reversed, holding that those sales that were experimental in nature did not need to be disclosed

3   to the Patent Office.

> Underlying the trial court's decision appears to be an assumption
> that it is incumbent upon an applicant or his attorney to disclose
> to the PTO all use activities which occurred prior to the
> application date so that the PTO examiner can decide whether
> such activities amount to a public use or on sale time bar under
> § 102(b).  No precedent of this court or of any other circuit
> supports this broad proposition.  Such activities may or may not
> be "material" to examination. ... Similarly, in the face of an
> affidavit that certain "sales" were for experimental purposes, the
> "sales" information would have no effect on examination.

10  *Id.*  Here, HSI's allegations, even if taken as true, amount to only a beta test, i.e., experimental

11  use of the software.  Berretta Dec., Ex. I (definition of "beta test").  A showing that a patentee

12  has publicly used its device prior to the critical date does not necessarily trigger the public use

13  bar, because evidence that the public use of the patented device was primarily experimental can

14  negate an assertion of invalidity.  *Monon Corp. v. Stoughton Trailers*, 239 F.3d 1253 (Fed. Cir.

15  2001).

16          Here, each of the distributions alleged by HSI that occurred prior to the critical date of

17  March 2, 1997 was, in HSI's own words, a "beta test" distribution, and thus experimental.

18  Under *Reactive Metals*, *supra*, these activities did not need to be disclosed to the Examiner.

19  Accordingly, any allegation of inequitable conduct based on these "beta test customers" would

20  fail as a matter of law.

21          There is also no good cause shown for this last minute amendment to HSI's pleadings.

22  HSI admits that Golden Hour timely disclosed its beta test documents on October 31, 2007

23  with its Preliminary Infringement Contentions.  See Mewes Dec., ¶ 18.  It was then incumbent

24  on HSI to review those disclosures and timely disclose any invalidity theories based upon

25  public use or on sale bars.  HSI again ignored its obligations and failed to comply with its

26  disclosure requirements, and again offers no justifiable excuse for its lack of diligence.

27  / / /

28  / / /

-12-

### III.  HSI HAS FAILED TO SHOW GOOD CAUSE TO AMEND ITS INVALIDITY CONTENTIONS

HSI also seeks leave to amend its Preliminary Invalidity Contentions to allege additional new contentions for invalidity.  Under the Northern District's Local Patent Rules, the Preliminary Invalidity Contentions of a party are final, and "[a]mendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause."  Patent L.R. 3-7.

**A.     Applicable Legal Standards**

The local patent rules in the Northern District of California require defendants in patent cases to provide early notice of their invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1365-1366 (Fed. Cir. 2006).  The policy behind amending claim charts is "decidedly conservative," and designed to prevent a "shifting sands" approach to patent litigation.  *LG Elecs. Inc. v. Q-Lity Computer Inc.,* 211 F.R.D. 360, 367 (N.D.Cal. 2002).  The patent local rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *O2 Micro,* 467 F.3d at 1366 n. 12.

**B.     HSI Should Not Be Permitted To Introduce New Allegations Based On Evidence Belatedly Obtained From Charles Freeman**

HSI seeks leave to amend its invalidity contentions to add contentions related to the sale of AeroMed Software with a ProPaq Interface and the sale of AeroMed Software with a Comm Server prior to the critical date.  HSI argues that there is good cause to allow the amendments because (1) HSI was diligent in its effort to obtain this new information from Mr. Freeman; and (2) there is no prejudice to Golden Hour in allowing the amendment.  HSI is wrong on both counts.

/ / /

/ / /

-13-

1. **HSI Was Always Able to Obtain Documents and Information From Charles Freeman Well Before Its Invalidity Contentions Were Due**

HSI argues that it was diligent in its efforts to obtain information from Charles Freeman. The record reveals this not to be the case. HSI correctly notes that this case was filed in December 2006 and that discovery was limited through August 2007. HSI then states that given that the scope of discovery was limited until August 2007 in the hopes of settling the case, it was reasonable that it not serve discovery during the December 2006-August 2007 time period. However, at the same time, HSI admits that it was busy during July and August 2007 seeking out discovery from Mr. Freeman, apparently deciding that it shouldn't limit its discovery after all. In fact, discovery was always open as to liability issues, so this argument is just another red herring.

Once the August settlement conference failed to achieve a settlement, discovery opened as to all issues in the case. HSI argues that Mr. Freeman said that he had no other relevant documents and HSI thus had no reason to ask for more documents. However, HSI ignores the fact that without a subpoena, Mr. Freeman was under no obligation to search his records for prior art. If HSI truly were diligent in seeking out discovery from Mr. Freeman, it could have subpoenaed him in August 2007, at least three months before its invalidity contentions were due in this case. In fact, HSI completely dropped the ball and never followed up with Mr. Freeman after their initial discussions in mid-2007. Berretta Dec., Ex. E at 137-138 (Freeman Dep.). When HSI finally did re-connect with Mr. Freeman and request his documents on March 3rd of this year, he quickly responded the same day and promised all his documents by the end of that same week. Berretta Dec., Ex. J. There was never anything standing in the way of HSI properly marshaling its evidence of invalidity in a timely manner under the rules, and it had at least a year to do it.

In a factually similar situation, the Northern District has excluded these types of "ancillary" documents when produced only after the filing of a summary judgment motion. The memorandum and order issued in *IXYS Corp. v. Advanced Power Technology, Inc.*, 2004 WL 1368860 (N.D. Cal. 2004) is instructive. Defendant Advanced Power Technology

-14-

1  ("APT") had timely identified certain devices as relevant prior art.  In addition to the devices

2  themselves, certain "mask layer data" was necessary to fully prove up APT's prior art.  This

3  mask layer data, however, had not been timely disclosed and produced by APT pursuant to

4  Patent L.R. 3-4.  The situation was thus very analogous to the present case involving a

5  disclosed user manual and undisclosed ancillary documents related to the user manual.

6      *IXYS* moved to preclude APT from introducing the late-produced document into

7  evidence as being untimely produced.  The court granted the motion, rejecting APT's

8  arguments that the rules did not require that it produce "ancillary" documents relied upon in its

9  motion.  The court noted that:

10      APT's reading of the Patent Local Rules is untenable at best, and insultingly
        tendentious at worst.  The Local Rules exist to further the goal of full, timely
11      discovery and provide all parties with adequate notice and information with
        which to litigate their cases, not to create supposed loopholes through which
12      parties may practice litigation by ambush.  Rule 3-4(b) quite obviously requires
        APT to produce more than the 'identity' of the prior art upon which it seeks to
13      rely-if APT believes that a mask layer photograph or drawing is relevant to this
        action, the Rule 3-4(b) requires APT to serve upon IXYS a copy of the same
14      document.

15  *IXYS Corp.* at *3.  The court also chastised APT for failing to produce the documents

16  responsive to *IXYS Corp.'s* outstanding discovery requests.

17      Moreover, IXYS's requests for production of documents targeted precisely these
        types of prior art documents.  [Citation omitted].  APT's decision to deliver the
18      documents upon which its motion for summary judgment relies to IXYS only
        *after* it has already filed that motion is simply unconscionable.
19

20  *Id.*  Similarly, in this case Golden Hour's initial requests for production also targeted these

21  same types of documents.  Specifically, Golden Hour's Request for Production No. 1, served

22  over a year ago on February 21, 2007, requests: "All documents and things which HSI will use

23  or might use to support its defenses in this lawsuit."  HSI failed to produce all the requested and

24  relevant documents in a timely manner even though it knew exactly where to find them.  HSI

25  did not even need a subpoena.  The record is clear that Mr. Freeman was more than willing to

26  provide HSI whatever it asked for at any time.  HSI has offered no excuse or good cause for its

27  failure to produce these documents in a timely manner.

28  / / /

-15-

1    HSI also argues that Mr. Freeman's confidentiality objections somehow hindered its

2 ability to obtain documents and suggests that Golden Hour's delay in filing the protective order

3 somehow is to blame.  But these delays were primarily the result of HSI's former counsel, and

4 then HSI's change of counsel.  In any event, Mr. Freeman never raised any confidentiality

5 objections until well after the protective order was in place, and prior to the issuance of the

6 protective order, the parties were already treating documents in accordance with the Court's

7 standard order (as is customary in patent cases).  Had HSI been diligent in obtaining and

8 producing these documents, the protective order issues would not have stood in the way.  HSI

9 merely seeks to blame everyone else for its lack of diligence, but the record is clear that HSI is

10 the only party to blame.

11        **2.    <u>Golden Hour Would Be Prejudiced</u>**

12    HSI argues that Golden Hour would not be prejudiced because "HSI's contentions

13 already identified the AeroMed Software as prior art, and thus served the purpose of putting

14 Golden Hour on notice."  However, this argument fails for at least two reasons.  First, Golden

15 Hour was not on notice.  The AeroMed software itself was not listed as invalidating prior art

16 under section 102(b).  Rather, HSI asserted only that the manuals were anticipatory references.

17 HSI admits that it knew about the AeroMed Software as early as July 2007, and yet it failed to

18 list the software itself as section 102(b) prior art under the Local Patent Rules.  The purpose of

19 the Local Patent Rules is to "further the goal of full, timely discovery and provide all parties

20 with adequate notice and information with which to litigate their cases." *IXYS Corp.* at *3.  To

21 add the AeroMed software to the contentions at this late date, even though HSI knew of its

22 existence long before the initial deadline for filing its preliminary invalidity contentions, serves

23 only to thwart to goal of full, timely disclosure.

24    Second, HSI's invalidity contentions did not adequately put Golden Hour on notice of

25 the alleged prior art features that it now wishes to introduce into the case.  HSI argued in its

26 summary judgment motion that the ProPaq interface helps to invalidate claims 4 and 13.  Prior

27 to serving its preliminary invalidity contentions, however, HSI had failed to uncover any

28 evidence that the prior art anticipated these claims.  Because HSI had found no anticipating

1   prior art, it stated that "HSI believes  that many charting modules (including AeroMed) had

2   instructions that included a communications interface for automatically reading a patient's vital

3   signs for many years prior to invention of any alleged inventions described in the patent-in-

4   suit." See Mewes Dec. Ex. C at pp. 3 and 5 of attached claim chart (emphasis added).

5        If merely stating a belief that a particular feature is present in the prior art were enough

6   to provide adequate notice of an invalidity theory, then the requirements of the Patent Local

7   Rules would be essentially meaningless.  Under such an interpretation , any party could satisfy

8   the requirements of the Patent Local Rules without conducting any prior art search and simply

9   stating a "belief" that claims were found in the prior art without providing any basis or reason

10  supporting that "belief."   Such vague contentions should not be allowed to serve as an

11  indefinite placeholder for later disclosed evidence.  If HSI truly needed more time to conduct

12  discovery and prepare its invalidity contentions, it could have sought relief from the Court.

13  HSI instead did nothing, and now that its summary judgment motion has been denied HSI

14  essentially wants to restart the disclosure process.

15       Golden Hour has conducted discovery and proceeded in this case with the

16  understanding that HSI was only alleging that the AeroMed Software manuals were prior art.

17  As a result, discovery was limited to the teaching of the manuals themselves, and was not

18  focused or directed to the AeroMed product.  To allow HSI to allege new types of prior art and

19  new theories of invalidity, ones which could have been easily known to them had they properly

20  utilized the discovery mechanisms available to them, is contrary to both the letter and the

21  underlying policies behind the Patent Local Rules.

22  **C.**      **From The Time This Case Was Filed, HSI Possessed All Of The Information It**

23       **Needed To Develop Its Theories Regarding Enablement**

24       HSI also seeks leave to add specific contentions that certain claims of the '073 patent

25  are not enabled.  HSI argues that there is good cause to allow the amendment at this very late

26  date because in opposing HSI's Motion for Summary Judgment, Golden Hour argued that the

27  primary alleged prior art reference relied upon by HSI for invalidity, the Flight Management

28  Module Manual (FMM Manual), did not provide an enabling disclosure.  Oddly, in its moving

1   papers HSI emphasizes that Golden Hour "argued for the first time" that the FMM Manual was

2   not enabled, seemingly suggesting that Golden Hour engaged in some type of unfair litigation

3   tactic.  This is nonsense.  There is no requirement in the Patent Local Rules that Golden Hour

4   disclose to HSI its "validity contentions," nor is there any requirement that Golden Hour share

5   with HSI in advance the many reasons why its invalidity case is deficient prior to opposing a

6   deficient summary judgment motion.

7       HSI imaginatively argues that, because Golden Hour argued that the FMM Manual is

8   not an enabling disclosure, and because the FMM Manual and the '073 patent have similar

9   disclosures, Golden Hour has now introduced enablement of the '073 patent claims into this

10  case.  However, this argument fails in several ways.  First, HSI relies only upon the declaration

11  of its own attorney, Ms. Mewes, as evidence that the disclosure of the FMM Manual and the

12  '073 patent are similar.  See Mewes Dec. ¶ 15 ("despite the fact that the '073 patent includes a

13  similar disclosure").  However, as was the case in the summary judgment briefing, how one of

14  ordinary skill in the art would understand the teachings of the two documents is the relevant

15  inquiry.

16      HSI's motion fails to provide any explanation of why one of ordinary skill in the art

17  would consider the two documents (i.e., the '073 patent and the FMM Manual) to have a

18  similar level of disclosure.  Ms. Mewes is not an expert, and is therefore not qualified to testify

19  as to whether the FMM Manual and the '073 patent include similar disclosures.  The '073

20  patent includes 17 pages of system diagrams and logic flow charts, and another 20 columns

21  written disclosure.  Patents are presumed valid, and this includes a presumption that they are

22  enabling under Section 112 of the Patent Act.  *Northern Telecom, Inc. v. Datapoint Corp.*, 908

23  F.2d 931, 941 (Fed. Cir. 1990).  On the other hand, as the Court noted in denying HSI's

24  summary judgment motion, Mr. Freeman purposefully "dumbed down" his user manuals.

25      Second, there was nothing preventing HSI from developing its enablement theories

26  from the day this lawsuit was filed.  Whether the FMM Manual is an enabling disclosure is a

27  separate and distinct question from whether the claims of the '073 patent are enabled.  The

28  determination of whether the FMM Manual provides an enabling disclosure is based solely on

1  the content of its disclosure and how it would be understood by one of skill in the art.

2  Similarly, the determination of whether the '073 patent claims meet the enablement

3  requirement of Section 112 is based on the contents of its disclosure, and how it would be

4  understood by one having ordinary skill in the art.  These are separate and distinct inquiries and

5  are not related as suggested by HSI.  Whether the FMM Manual is enabled simply has no

6  bearing on whether the '073 patent claims are enabled.  In short, Golden Hour's meritorious

7  defense to HSI's summary judgment motion does not somehow provide a justifiable excuse for

8  HSI's failure to disclose it invalidity contentions.

9       HSI also argues that Golden Hour took new positions during summary judgment

10  briefing of which it was not aware until very recently.  Ms. Mewes states in her declaration that

11  HSI was not aware of Golden Hour's claim construction positions until April 18, 2008.  See

12  Mewes Dec. ¶ 15.  This also misstates the facts.  HSI was on notice of Golden Hour's position

13  regarding automatic collection of information from Golden Hour's infringement contentions

14  served on October 31, 2007.  In its preliminary infringement contentions, Golden Hour stated

15  that "HSI's Flightlink CAD portion of the integrated system offered for sale by HSI to

16  Omniflight includes instructions for tracking the flight path of a helicopter by providing

17  automatic flight following services."  Berretta Dec., Ex. K at 2.

18       Moreover, HSI has been cooperating with one of the defendants, emsCharts, Inc.

19  ("emsCharts"), in another patent action asserting the '073 patent in the Eastern District of

20  Texas.  The case in Texas was filed first and so is more advanced.  Golden Hour's preliminary

21  claim constructions in the Texas case were served on emsCharts on December 4, 2007, 11 days

22  prior to HSI's invalidity contentions being due in this case.   The preliminary claim

23  constructions in the Texas case were substantially the same as those filed in this case.  Berretta

24  Dec., Ex. L.  Unlike most defendants, because the Texas case is moving ahead of this case

25  under virtually identical patent local rules, HSI has always enjoyed an "advanced showing" of

26  Golden Hour's positions and arguments regarding claim construction.

27       Given that Golden Hour's preliminary infringement contentions served in October 2007

28  made clear that it viewed the tracking of the flight path of a helicopter as an automatic process,

-19-

1 | and given that HSI had access to Golden Hour's preliminary claim constructions in the Texas
2 | case in December 2007, it strains credulity to believe that HSI first learned of Golden Hour's
3 | position on automatic collection of transportation tracking information on April 18, 2008. HSI
4 | knew of Golden Hour's claim construction positions well before HSI's preliminary invalidity
5 | contentions were due. This cannot excuse HSI for its failure to disclose lack of enablement as
6 | an alleged defense in its original preliminary invalidity contentions.

## IV.  CONCLUSION

HSI's proposed amendments to its answer would be futile because the allegations of inequitable conduct would not survive summary judgment. HSI has also failed to show good cause for amending its invalidity contentions, including relying on documents only recently produced from Charles Freeman. HSI's numerous excuses for its own lack of diligence are specious. Based on the foregoing, Golden Hour respectfully requests that the Court deny HSI's Motion to Amend in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: June 6, 2008

By:  s/Frederick S. Berretta
Frederick S. Berretta
Boris Zelkind
Phillip A. Bennett

Attorneys for Plaintiff
GOLDEN HOUR DATA SYSTEMS, INC.

5484936

**CERTIFICATE OF SERVICE**

I am a citizen of the United States of America and I am employed in San Diego, California. I am over the age of 18 and not a party to the action. My business address is 550 West C Street, Suite 1200, San Diego, California 92101. On June 6, 2008, I caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND PRELIMINARY INVALIDITY CONTENTIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

> Heather N. Mewes
> Fenwick & West LLP
> 555 California Street, 12th Floor
> San Francisco, CA 94104
> hmewes@fenwick.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: 6-6-08

By: _____
Luz Wright

5484936

Certificate of Service
Civil Action No. C-06-7477 SI