HEATHER MEWES (CSB NO. 203690)
hmewes@fenwick.com
DAVID M. LACY KUSTERS (CSB NO. 241335)
dlacykusters@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
Facsimile:    (415) 281-1350

Attorneys for Defendant and Counterclaimant
HEALTH SERVICES INTEGRATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOLDEN HOUR DATA SYSTEMS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH SERVICES INTEGRATION, INC., a California Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:06-cv-07477-SI<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT HEALTH SERVICES INTEGRATION, INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND PRELIMINARY INVALIDITY CONTENTIONS**<br><br>Date:    July 2, 2008<br>Time:    3:30 p.m.<br>Ct. Rm.:  10<br>Judge:   The Honorable Susan Illston |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. DISCUSSION ................................................................................................................. 2

    A. HSI Should Be Allowed to Amend Its Answer ................................................. 2

        1. The Proposed Amendments Present a Prima Facie Claim of Affirmative Misrepresentation to the Patent Office ................................... 3

        2. The Proposed Amendments Present a Prima Facie Claim of Failure to Disclose Operational Details and the Existence of Documents to the Patent Office .................................................................................... 5

        3. The Proposed Amendments Present A Prima Facie Claim of Inequitable Conduct Related to Its Public Use ........................................... 6

    B. HSI Should Be Allowed to Amend Its Preliminary Invalidity Contentions .......... 8

        1. HSI Seeks to Amend Its Contentions to Incorporate the Recently Produced AeroMed Documents ............................................................... 9

            a. HSI Diligently Sought Both the AeroMed Documents and Leave to Amend After Their Production ..................................... 9

            b. Golden Hour Will Not Be Prejudiced by HSI's Amending of the Preliminary Invalidity Contentions to Include the AeroMed Documents ................................................................. 11

        2. HSI Seeks to Amend Its Contentions to Incorporate Golden Hour's Recently Disclosed Enablement Theories ............................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baxter Int'l, Inc. v. Cobe Lab., Inc.*,
    88 F.3d 1054 (Fed. Cir. 1996) ............................................................................................... 7

*Cargill, Inc. v. Canbra Foods, Ltd.*,
    476 F.3d 1359 (Fed. Cir. 2007) ............................................................................................. 3

*Caswell v. Calderon*,
    363 F.3d 832 (9th Cir. 2004) ................................................................................................. 2

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988) ........................................................................................... 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................................... 8

*Fiskars Inc. v. Hung Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000) ............................................................................................. 4

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................................. 1

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    C03-1431-SBA, 2006 U.S. Dist. LEXIS 90856
    (N.D. Cal. May 15, 2006) ............................................................................................... 1, 13

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
    323 F.3d 1354 (Fed. Cir. 2003) ............................................................................................. 3

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
    488 F.3d 982 (Fed. Cir. 2007) ............................................................................................... 3

*In re Fritz Cos. Secs. Litig.*,
    282 F. Supp. 2d 1105 (N.D. Cal. 2003) ................................................................................ 3

*IXYS Corp. v. Advanced Power Technology, Inc.*,
    Case No. C 02-03942 MHP, 2004 WL 1368860
    (N.D. Cal., Jun. 16, 2004) .................................................................................... 8, 9, 10, 11

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ................................................................................................. 2

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) ............................................................................................. 7

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 1997) ........................................................................................... 13

*Sweaney v. Ada County*,
    119 F.3d 1385 (9th Cir. 1997) ........................................................................................... 2, 5

*TP Laboratories, Inc. v. Professional Positioners, Inc.*,
    724 F.2d 965 (Fed. Cir. 1984) ............................................................................................... 7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

35 U.S.C. § 102(b) ........................................................................................................... 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ........................................................................................................ 1
Fed. R. Civ. P. 15(a)(1) ................................................................................................... 8
Fed. R. Civ. Pro. 34(a) .................................................................................................. 11
Fed. R. Civ. Pro. 34(a)(1) ............................................................................................. 11
Patent L.R. 3-1 .............................................................................................................. 11
Patent L.R. 3-3 .............................................................................................................. 11
Patent L.R. 3-4 .............................................................................................................. 11
Patent L.R. 3-4(b) ................................................................................................... 10, 11
Patent L.R. 3-6 ................................................................................................................ 8
Patent L.R. 3-7 ........................................................................................................... 1, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. INTRODUCTION

Leave to amend pleadings should be "freely" given. *See* Fed. R. Civ. P. 15(a). Likewise, leave to amend invalidity contentions should be given for good cause. *See* Patent L.R. 3-7. In both cases, the law favors deciding cases on the merits. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, C03-1431-SBA, 2006 U.S. Dist. LEXIS 90856, *22 (N.D. Cal. May 15, 2006). Golden Hour, however, does not want this case decided on the merits and accordingly ignores these standards and instead seeks to hold HSI to a summary judgment standard or higher. It even complains that HSI has failed to submit expert testimony and other evidence in support of its allegations. But the fact that Golden Hour disputes some of the factual allegations in HSI's pleadings is not grounds for denying leave to amend. It is not even grounds for granting a motion for summary judgment, let alone a motion to dismiss. Golden Hour is applying the wrong legal standard to a motion for leave to amend.

Moreover, while Golden Hour makes vague assertions of prejudice and complains about the "last minute" nature of HSI's motion, it fails to articulate any actual prejudice and fails to explain why a motion for leave to amend brought before the deadline for such motions and affecting *preliminary* (not final) contentions is in any way "last minute." There has been no claim construction and no expert reports in this case, and fact discovery remains open through at least October 2008. The only discovery relating to these amendments already taken was discovery from Charles Freeman (the inventor of the prior art AeroMed product)—and it is this new discovery that is the basis for most of the proposed amendments. Golden Hour's vague and unsupported assertions cannot be the basis for denying leave to amend.

HSI's proposed amendments are directed to the merits of this action. They modify the answer and preliminary invalidity contentions to conform to newly discovery evidence and newly disclosed arguments and positions from Golden Hour. Accordingly, HSI respectfully requests that the Court grant its motion for leave to amend.

## II. DISCUSSION

### A. HSI Should Be Allowed to Amend Its Answer.

Golden Hour's opposition is based solely on supposed "futility." Plaintiff's Opposition to Defendant's Motion for Leave to Amend Answer and Preliminary Invalidity Contentions, Dkt No. 72 ("Opp. Brief") at 3:18–21. But, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). And an amendment is likely not futile if it raises a dispute of fact. *Caswell v. Calderon*, 363 F.3d 832, 839 (9th Cir. 2004). HSI's proposed amended answer alleges facts that, if proved, would constitute a valid inequitable conduct claim. The fact that Golden Hour disputes these allegations merely confirms that amendment should be allowed. *Id.*

HSI's proposed amended answer raises at least three instances of inequitable conduct (which Golden Hour distorts in its opposition): (1) the named inventors or others involved in the prosecution of the '073 patent made an affirmative misrepresentation to the Patent Office regarding the capabilities of the AeroMed prior art; (2) the named inventors or others involved in the prosecution of the '073 patent withheld from the Patent Office material operational details regarding the AeroMed prior art as well as the existence of other relevant documents from the Patent Office; and (3) the named inventors or others involved in the prosecution of the '073 patent withheld from the Patent Office the fact that Golden Hour's software embodying one or more of the claims was in public use more than one year prior to the application date of the '073 patent.[1]

---

[1] Golden Hour states that it was not an inventor of the '073 patent and was not an assignee during the prosecution of this patent (though it is the current assignee and the named inventor Kevin Hutton was Golden Hour's CEO and Founder). As such, Golden Hour alleges that HSI's allegations are too "vague and unspecified." Opp. Brief at 4:5–12. In an effort to avoid further dispute on this issue and, instead, focus discussion on the merits of this case, HSI offers exhibit A to address this objection. Reply Declaration of David M. Lacy Kusters in Support of Defendant Health Services Integration, Inc.'s Motion for Leave to Amend Answer and Preliminary Invalidity Contentions ("DLK Dec.") Ex. A ("Proposed Answer").

-2-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Patent applicants "have a duty to prosecute patent applications in the Patent Office with
2    candor, good faith, and honesty." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d
3    982, 999 (Fed. Cir. 2007). A breach of this duty constitutes inequitable conduct and renders the
4    entire patent unenforceable. *Id.* In order to establish inequitable conduct, the party challenging
5    the patent is required to establish by clear and convincing evidence that the patent applicant
6    "(1) either made an affirmative misrepresentation of material fact, failed to disclose material
7    information, or submitted false material information, and (2) intended to deceive the U.S. Patent
8    and Trademark Office." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir.
9    2007). "[A]ffirmative misrepresentations by the patentee, in contrast to misleading omissions, are
10   more likely to be regarded as material." *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d
11   1354, 1367 (Fed. Cir. 2003). Each of HSI's proposed amendments regarding inequitable conduct
12   satisfies the *prima facie* requirement.

**1.    The Proposed Amendments Present a Prima Facie Claim of Affirmative Misrepresentation to the Patent Office.**

15   The proposed amendments adequately plead inequitable conduct by an affirmative
16   misrepresentation. In its Proposed Answer, HSI specifically identifies the statement in the '073
17   patent at column 1, lines 50-57 (alleging that the prior art AeroMed Software was not "fully
18   integrated" and does not provide "comprehensive integration") as an affirmative
19   misrepresentation. Proposed Answer at 5:27-6:8.[2] The amendments further allege that the
20   inventors "were aware that the AeroMed Software product had integrated dispatch, charting,
21   billing and administrative modules," (Proposed Answer at 4:14–15) "attended public
22   demonstrations of the AeroMed Software," (*Id.* at 4:17–18) and "had access to a copy or
23   demonstration version of the AeroMed Software and/or materials describing the AeroMed
24   Software product before or during prosecution of the '073 patent." (*Id.* at 4:21–23). The

---

[2] Golden Hour's assertion that "HSI has not shown that the statement . . . is actually false" and that HSI "only presents attorney arguments on that point" (Opp. Brief at 7:15–16), underline its misunderstanding of the relevant standards for motions to amend pleadings. The "attorney argument" here are allegations in the amended answer (*see, e.g.,* Proposed Answer at 4:8-10, 5:27-6:8), which Golden Hour must accept as true for these purposes. *See In re Fritz Cos. Secs. Litig.*, 282 F. Supp. 2d 1105, 1111 (N.D. Cal. 2003) (equating the futility analysis of a motion to amend with the standard for a motion to dismiss).

-3-

| HSI'S MTN TO AMEND REPLY BRIEF | Case No. 3:06-CV-07477-SI |
|---|---|

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  amendments plead that these facts were material to patentability. *Id.* at 4:24–5:2. Lastly, the
2  amendments plead that these material facts were "knowingly, willfully and with the intent to
3  deceive the USPTO, misrepresented to the USPTO." *See id.* at 5:27–6:8. The proposed
4  amendments allege an affirmative misrepresentation of a material fact with intent to deceive the
5  Patent Office. Nothing more is required.

6  Golden Hour's reliance on *Fiskars* to show that the AeroMed software cannot be a basis
7  for inequitable conduct is misplaced. *Fiskars Inc. v. Hung Mfg. Co.*, 221 F.3d 1318 (Fed. Cir.
8  2000). *Fiskars* held that a brochure that was cited and disclosed to the patent examiner could not
9  be deemed to have been withheld, despite the fact that the patent examiner did not consider it. *Id.*
10 at 1327. Those are not the facts of this case. In this case, the inventors made an affirmative
11 misrepresentation regarding the capabilities of the AeroMed software—they claimed that this
12 software was not "fully integrated" and did not have "comprehensive integration." *See* '073
13 Patent, col. 1:49–57. In addition, as discussed below, the inventors and other involved in
14 prosecution of the '073 patent did not disclose to the Patent Office any materials, such as
15 brochures or website printouts, actually describing the AeroMed software, but instead elected to
16 make a selective disclosure that intentionally left out the most relevant information about this
17 software, namely the fact that it was integrated. Proposed Answer at 4:13-15, 5:27–6:8. *Fiskars*
18 has no application to affirmative misrepresentations, and if it did, there would be no judicial
19 review of affirmative fraud on the Patent Office. But still further, there is nothing in *Fiskars* that
20 would allow patent applicants to make *selective* disclosures—indeed, the very rationale behind
21 *Fiskars* is that the examiner was told *all* the relevant information and it was not the fault of the
22 patentee that the examiner did not consider this information. Here, the most material facts were
23 withheld from the examiner and that is the fault of the patentee.

24 Golden Hour further argues that HSI should not be allowed to amend its inequitable
25 conduct claims because it "ignores [the] . . . possibility" that any wrongful conduct by the
26 inventors or Golden Hour *could* have been by mistake. Opp. Brief at 8:21–22. The standard is
27 not whether Golden Hour could prevail at trial, but whether a "set of facts can be proved under
28 the amendment to the pleadings that would constitute a valid and sufficient claim or defense."

-4-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HSI'S MTN TO AMEND REPLY BRIEF                                                Case No. 3:06-CV-07477-SI

1  *Sweaney*, 119 F.3d at 1393. Golden Hour concedes the possibility that the inventors could have
2  known the statement was false or recklessly disregarded the truth. At the pleading stage, HSI
3  need only show that such motives were possibilities.

    **2. The Proposed Amendments Present a Prima Facie Claim of Failure to Disclose Operational Details and the Existence of Documents to the Patent Office.**

6    The proposed amendments likewise plead every element of HSI's inequitable conduct
7 claim based on the inventor's failure to disclose. In particular, the amendments identify
8 information the inventors withheld from the Patent Office, including specific and material
9 information about the capabilities of the AeroMed software. Proposed Answer at 4:13–15, 4:20–
10 24; *see also id.* at 5:3–26. It does no good for the inventors to submit an Information Disclosure
11 Statement merely listing different software modules found in the prior art when they otherwise
12 claim that these modules were not integrated as required by the claims. Thus, while the inventors
13 made a limited and selective disclosure of the AeroMed prior art to the Patent Office, they did not
14 disclose all the information they knew.

15    Golden Hour apparently disputes the allegation that it had any documents or other
16 information regarding the AeroMed software and other undisclosed prior art systems during the
17 pendency of the prosecution of the '073 patent. *See* Opp. Brief at 5:12–19, 7:17–18, 11:6–7. It
18 claims that because the particular printouts submitted to the Patent Office in connection with later
19 prosecution are dated from 2003, it must not have had possession of these documents before then.
20 *Id.* at 11:4–7. However, it is the inventors that represented to the Patent Office that the printouts,
21 despite having been printed in 2003, actually dated from 1998 or earlier. Declaration of Frederick
22 S. Berretta In Support of Plaintiff's Opposition to Defendant's Motion for Leave to Amend
23 Answer and Preliminary Invalidity Contentions, Dkt No. 72-2 ("Berretta Dec.") Ex. G at 4.
24 Moreover, HSI's inequitable conduct claim for failure to disclose is not limited to these particular
25 printouts, though they do show that the inventors had ready access to such information. HSI
26 alleges that the inventors of the patent-in-suit also "had access to a copy or demonstration version
27 of the AeroMed Software and/or materials describing the AeroMed Software product before or
28 during the prosecution of the '073 patent." Proposed Answer at 4:21–23; *see also id.* at 4:24,

-5-

5:27–28 (alleging materiality and intent). That Golden Hour disputes this fact is irrelevant and just confirms that leave to amend should be granted. HSI has adequately pled the elements of inequitable conduct based on these failures to disclose.

Golden Hour makes several technical arguments regarding its information disclosure statements ("IDS") and whether the inventors were required to file a PTO-1449 form. Opp. Brief at 4:25–6:28. However, HSI's inequitable conduct claim is not about whether the named inventors and others substantially involved in prosecution of the '073 patent complied with formalities in submitting an IDS (though it is not clear they did since Golden Hour's argument assumes, contrary to HSI's allegations, that the inventors had no "other documents" describing the AeroMed prior art). Rather, HSI's inequitable conduct claim is directed to affirmative misrepresentations, failures to disclose prior art, and failure to disclose prior public use. Similarly, Golden Hour finds technical fault with HSI's identification of the Patent Application No. 10/007,642 as being "related" to the '073 patent.[3] But, that application and the patent-in-suit cover related subject matter, both dealing with "integrated medical database system[s]" in the "emergency medical transportation industry." Berretta Dec. Ex. F at col. 1:28–31. The patents share common inventors. The '905 patent also specifically incorporates by reference the '073 patent. *Id.* at col. 6:58–60. They are related. Nonetheless, in an effort to focus this case on the merits instead of technicalities, HSI offers exhibit A of the declaration of David M. Lacy Kusters to clarify these issues.

### 3. The Proposed Amendments Present A Prima Facie Claim of Inequitable Conduct Related to Its Public Use.

HSI alleges that Golden Hour's beta testing program constituted a public use more than one year before the application date of the '073 patent. "A person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). "Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the

---

[3] The 10/007,642 application was issued as U.S. Patent No. 7,233,905 ("'905 patent"). Opp. Brief at 9:26–27.

-6-

**HSI'S MTN TO AMEND REPLY BRIEF**  Case No. 3:06-CV-07477-SI

1  inventor who is under no limitation, restriction or obligation of secrecy to the inventor."
2  *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). "[I]f a
3  *prima facie* case is made of public use, the patent owner must be able to point to or must come
4  forward with convincing evidence to counter that showing." *TP Laboratories, Inc. v.
5  Professional Positioners, Inc.*, 724 F.2d 965, 971 (Fed. Cir. 1984). To qualify as an experimental
6  use, the inventor must be testing the device, not the market. *Id.* at 973.

7        What matters is whether the inventor was bound by a confidentiality agreement, not
8  whether the patent holder unilaterally assigns the label of "beta" to the use. Indeed, as Golden
9  Hour alleges that the patent-in-suit was conceived in 1991 and that "all basic concepts were in
10 place during alpha testing in 1992," its present unsupported allegation that public use of the
11 invention many years later in 1997 was still "experimental" is suspect despite the "beta" label.
12 DLK Dec. Ex. B at 2:25–27, 3:26–27.

13       HSI has alleged that Golden Hour's software products embody the patent-in-suit.
14 Proposed Answer at 4:25–5:2, 6:15–18. The proposed answer states that Golden Hour's software
15 was sent to potential beta test customers, more than one year prior to the application date, and
16 before those potential customers entered into any confidentiality agreement. *Id.* at 6:9–14. Such
17 public use was material to patentability. *Id.* at 6:19–20. The inventors did not disclose this fact to
18 the Patent Office (*Id.* at 6:21–24) and this failure to disclose was performed "knowingly,
19 willfully, and with intent to deceive the USPTO." *Id.* at 6:25–28.

20       Instead of addressing the *prima facie* sufficiency of HSI's allegation of inequitable
21 conduct based on public use, Golden Hour merely argues that its use was "experimental." Opp.
22 Brief at 11:18–12:20. While experimental use may negate public use, "[a]n analysis of
23 experimental use . . . requires consideration of the totality of the circumstances and the policies
24 underlying the public use bar." *Baxter Int'l, Inc. v. Cobe Lab., Inc.*, 88 F.3d 1054, 1060 (Fed.
25 Cir. 1996). Such an analysis would require an examination of the software in issue, any
26 agreements in place with the potential customers, whether any later made changes to the software
27 were trivial, and a host of other fact based considerations. The question before this Court is not
28 whether Golden Hour may prevail in its assertion of experimental use—HSI believes it will not—

but whether HSI has made a *prima facie* showing of inequitable conduct. Golden Hour's extensive argument regarding experimental use is mistimed and belongs instead in later proceedings.

Amendments to pleadings are to be freely granted. Fed. R. Civ. P. 15(a)(1). Here, HSI has shown it has good faith in requesting the amendments. HSI is promptly conforming the pleadings to newly produced evidence. There is nothing "last minute" about this motion. Golden Hour submits no evidence of undue delay and concedes that it will suffer no prejudice. The amendments are not futile, since HSI has adequately pled the elements of inequitable conduct. HSI has met all the requirements for amending its pleadings.

### B. HSI Should Be Allowed to Amend Its Preliminary Invalidity Contentions.

Golden Hour also objects to HSI's proposed supplementation of its preliminary invalidity contentions. It asserts that HSI should not be allowed to supplement even *preliminary* contentions long before the close of discovery, let alone trial, and in circumstances where there is no evidence of prejudice. *But see IXYS Corp.,* 2004 WL 1368860 at *1 (N.D. Cal., Jun. 16, 2004) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

HSI moved to supplement its contentions to reflect (1) the production of documents recently produced by Mr. Freeman (the inventor of the prior art AeroMed Software product); and (2) Golden Hour's newly asserted theories regarding enablement—both having occurred after the original deadline for HSI's preliminary invalidity contentions in December 2007.[4] Preliminary invalidity contentions are just that, preliminary. They can be amended at any time upon a showing of good cause and they can also be amended as of right under the Patent Local Rules after claim construction (not due until July 2008). *See* Patent L.R. 3-6, 3-7. There is good cause for HSI's supplementation which is based upon the discovery of new evidence (further supporting contentions already disclosed to Golden Hour) as well as the discovery of new theories espoused

---

[4] Notably, Golden Hour does not dispute HSI's amendment related to evidence of state of the art including an article by E.F. Codd and common off-the-shelf software development tools and relational database management systems. Declaration of Heather N. Mewes in Support of Health Services Integration, Inc.'s Motion for Leave to Amend Answer and Preliminary Invalidity Contentions, Dkt No. 70 ("Mewes Dec.") Ex. B at 7:14–20.

-8-

**HSI'S MTN TO AMEND REPLY BRIEF** Case No. 3:06-CV-07477-SI

by Golden Hour itself. Furthermore, HSI has diligently sought to amend its contentions. Mewes Dec. at ¶ 17.

### 1. HSI Seeks to Amend Its Contentions to Incorporate the Recently Produced AeroMed Documents.

#### a. HSI Diligently Sought Both the AeroMed Documents and Leave to Amend After Their Production.

Golden Hour alleges that HSI could have earlier obtained the AeroMed documents upon which the amendments are based. This belies the facts. HSI sought discovery from Mr. Freeman in July 2007. Declaration of Ken Stults in Support of Defendant Health Services Integration, Inc.'s Motion for Leave to Amend Answer and Preliminary Invalidity Contentions, Dkt No. 69 ("Stults Dec.") at ¶ 6. At that time, Mr. Freeman told HSI that (1) these were the only documents he had relating to this prior art product; and (2) it was only by chance he had the manuals since a customer had returned them to him. Stults Dec. at ¶ 6. HSI believed Mr. Freeman's statement that the manuals were found only by chance and had no reason to believe that he had any additional relevant documents. Mr. Freeman did not appear uncooperative and, as such, there was no need to resort to formal discovery mechanisms. It was not until January 28, 2008 that Mr. Freeman indicated that he may have additional relevant documents. Stults Dec. at ¶¶ 8–9. Mr. Freeman produced the documents in March 2008 and HSI promptly produced them to Golden Hour three days later. Mewes Dec. at ¶ 12. HSI diligently sought to obtain all relevant information from Mr. Freeman and HSI reasonably believed the July 2007 production constituted all relevant documents in his possession. When HSI learned that there might be more evidence, it diligently sought that evidence, produced it to Golden Hour, and brought the present motion.

Golden Hour alleges this Court should deny HSI's motion to amend its preliminary invalidity contentions based on the supposed "very analogous" *IXYS* case. Opp. Brief at 14:25–15:27. In *IXYS*, the parties had served final contentions and initial expert reports. *IXYS Corp.*, 2004 WL 1368860 at *1. Twenty-one days before rebuttal expert reports were due, the defendant produced nineteen pages of additional material relevant to invalidity. *Id*. **Six days** before rebuttal expert reports, the defendant produced ninety pages of additional material. *Id*. The plaintiff's expert was able to incorporate the first production of nineteen pages in his rebuttal report, but not

-9-

the second production of ninety pages. *Id.* The defendant then moved to amend its final invalidity contentions. *Id.* The court allowed the defendant to amend as to the first nineteen pages, but not as to the second ninety pages, relying on the prejudice to the plaintiff. *Id.* at *1–2. Since the plaintiff was able to address the first production in at least one of its expert reports, it was not harmed and the amendment was allowed. *Id.*

*IXYS* supports granting leave to amend in this case. Here, neither final invalidity contentions nor expert reports have been served. Final contentions will not be due until after this Court's claims construction order. Expert reports have not yet begun and fact discovery remains open until at least October 9, 2008. Unlike in *IXYS*, Golden Hour is not prejudiced by allowing HSI to amend its preliminary invalidity contentions. Golden Hour will have over three months to take fact discovery after the scheduled hearing for this motion. Its expert will be able to address the new references adequately in his or her expert reports. It is telling that the court in *IXYS* ***allowed*** amendment of final invalidity contentions when the plaintiff was able to address the new references in its *rebuttal* report. If twenty-one days before rebuttal reports were due in *IXYS* is sufficient, then the many months Golden Hour will have to conduct discovery and its expert will have to write reports is more than sufficient.

Golden Hour further relies on *IXYS* to argue that HSI should be precluded from using any "ancillary" documents produced by Mr. Freeman (an argument already rejected in the Court's summary judgment order). However, Golden Hour's reliance on *IXYS* for this point is also misplaced. In *IXYS*, the defendant identified a prior art product in both its preliminary and final invalidity contentions, but failed to produce documents relating to this product either pursuant to Patent L.R. 3-4(b) or outstanding document requests, *even though the defendant had these documents in its possession all along*. *Id.* at *2–3. Later, the defendant moved for summary judgment and, only then, produced the relevant documents. *Id.* at *2. The court noted that "there is every indication that [the defendant] ha[d] held these documents in its possession, ready for use, since the beginning of their litigation." *Id.* at *3.

Very different facts are presented in this case. HSI was not in possession, custody, or control of the additional AeroMed documents until March 11, 2008. Mewes Dec. at ¶ 12. HSI

-10-

HSI'S MTN TO AMEND REPLY BRIEF　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:06-CV-07477-SI

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   produced the additional documents to Golden Hour *three days later*, on March 14, 2008.  *Id.*  HSI

2   has not been holding onto these documents as a litigation tactic.  Furthermore, unlike the

3   defendant in *IXYS*, HSI has fully complied with its discovery obligations.  Rule 34(a) limits the

4   scope of the production of documents to those "which are in the possession, custody or control of

5   the party upon whom the request is served . . . ."  Fed. R. Civ. Pro. 34(a)(1).  HSI has diligently

6   produced all documents relating to the AeroMed prior art as soon as those documents have come

7   within HSI's possession, custody, or control.  HSI could not have produced documents it did not

8   have.  HSI's prompt production of the documents to Golden Hour stands in stark contrast to the

9   defendant's actions in *IXYS*.

10   Moreover, the Patent Local Rules cannot require the production of every third party

11   document relating to prior art before the deadline for preliminary invalidity contentions (the rule

12   advocated by Golden Hour here).  In the typical patent case, defendants are required to serve their

13   Patent L.R. 3-4(b) disclosures with their preliminary invalidity contentions, a mere 55 days after

14   the initial case management conference.  Patent L.R. 3-1, 3-3, and 3-4.  It would simply not be

15   possible to conduct this discovery within the time frame provided—particularly if there are third

16   party confidentiality issues implicated (as there were here)—and plaintiffs would have perverse

17   incentives to drag their feet in resolving disputes over such issues.  Furthermore, such a

18   requirement emphasizes form over substance: the purpose of the Patent Local Rules is to solidify

19   theories early in litigation and provide opposing parties with notice of those theories.  Golden

20   Hour has had notice and now just seeks tactical advantage.

21   **b.     Golden Hour Will Not Be Prejudiced by HSI's Amending of the
22          Preliminary Invalidity Contentions to Include the AeroMed
                Documents.**

23   Golden Hour's opposition fails to state any actual prejudice that would be caused by this

24   Court granting HSI's motion to amend relating to the AeroMed documents.  Golden Hour's

25   discussion of prejudice is limited to the fact that Golden Hour conducted discovery with an

26   understanding that prior art was limited to the AeroMed manuals.  Opp. Brief at 17:15–16.  While

27   this may be true, there is no harm to Golden Hour.  Discovery is still open and will remain open

28   until October 9, 2008 and expert reports have not been served.  Golden Hour is free to take

-11-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 additional discovery, if necessary, and its experts have ample time to take the amended
2 contentions into consideration.

3 Instead of arguing that it will suffer actual prejudice, Golden Hour relies on vague policy
4 arguments to oppose HSI's motion to amend. HSI timely served its preliminary invalidity
5 contentions based on all the relevant documents it believed existed at the time. When HSI
6 learned of additional documents, the documents were promptly sought and produced to Golden
7 Hour, during summary judgment briefing. Immediately after, HSI filed the present motion to
8 amend. HSI is not seeking to thwart a full and timely disclosure—quite the opposite.

9 Golden Hour further argues that this Court should not allow HSI to present new
10 documents related to AeroMed's interface with ProPaq monitors, alleging that HSI's statement
11 that it believed AeroMed software included such an interface did not give Golden Hour proper
12 notice. HSI learned in December 2007, shortly before the preliminary invalidity contentions were
13 due, that the AeroMed software included an interface with ProPaq monitors. Mewes Dec. at ¶ 9.
14 HSI attempted to contact Mr. Freeman to verify this information, but he did not respond. *Id.*
15 Ultimately, Mr. Freeman did confirm such an interface existed and also produced documentation
16 of the interface. Reply Declaration of David M. Lacy Kusters in Support of Health Services
17 Integration, Inc.'s Motion for Summary Judgment, Dkt No. 57, Ex. E. The preliminary invalidity
18 contentions informed Golden Hour of HSI's current position, namely that the AeroMed software
19 included an interface with ProPaq monitors. HSI's provision of additional support for this
20 proposition does not change HSI's allegation. The contentions provided Golden Hour with notice
21 of exactly the same position that HSI currently advocates.

**2. HSI Seeks to Amend Its Contentions to Incorporate Golden Hour's Recently Disclosed Enablement Theories.**

24 Golden Hour also opposes HSI's proposed amendments setting out further contentions
25 regarding lack of enablement. These further contentions were the result of arguments raised for
26 the first time in Golden Hour's opposition to HSI's motion for summary judgment. Mewes Dec.
27 at ¶ 15. While Golden Hour asserts that HSI should have somehow divined Golden Hour's
28 positions before this, it points to no evidence that HSI was aware (or even should have been

-12-

**HSI'S MTN TO AMEND REPLY BRIEF**                                        Case No. 3:06-CV-07477-SI

aware) of these theories. The only evidence of record is that HSI learned of these new theories for the first time in April 2008 when Golden Hour filed its opposition. *Id.*

Golden Hour first asserts that HSI should not be allowed to supplement its contentions to assert lack of enablement based on Golden Hour's argument during summary judgment that the prior art was not enabled. This argument is relevant because a prior art reference need only provide the same level of enablement as the patent itself. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1471 (Fed. Cir. 1997) (holding that a reference providing a description "at a level of detail similar to those contained in the patent" was sufficient to find the reference enabling); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988) (holding that a prior art reference need not disclose technical details that are not part of the claims of a patent). Thus, if Golden Hour contends that the prior art is not enabling, then—applying the same standard—HSI contends that neither is the patent. It has accordingly supplemented its invalidity contentions on this basis.

Golden Hour's principal complaint appears to be that, in this motion for leave to amend, HSI has not offered expert testimony that the disclosures in the prior art and the patent are similar. Opp. Brief at 18:16–19. But, this argument is mistimed. Preliminary invalidity contentions are similar to pleadings: they provide the opposing party with information regarding the serving party's positions. *See Fresenius*, 2006 U.S. Dist. LEXIS 90856, *12. Preliminary invalidity contentions are not expert reports and need not be supported by expert testimony. *See id.* At this stage, HSI should be allowed to supplement its contentions and the parties will then have opportunity to test these theories.

Golden Hour next asserts that HSI should not be allowed to supplement its contentions to assert lack of enablement based on Golden Hour's argument during summary judgment that the term "recorded" actually means "collected automatically" (not "automatically stored" or saved as was previously agreed in the Joint Claim Construction Statement). Here, Golden Hour argues that HSI was on notice of Golden Hour's position since its preliminary infringement contentions as these contentions accused HSI's "automatic flight following services." Opp. Brief at 19:14–17, 19:27–20:3.

-13-

HSI'S MTN TO AMEND REPLY BRIEF          Case No. 3:06-CV-07477-SI

1   This argument is counter-factual.  HSI was unaware that this was Golden Hour's position
2   until the summary judgment briefing and Golden Hour presents no contrary evidence.  Mewes
3   Dec. at ¶ 15.  Indeed, HSI even agreed to the construction "automatically stored" since it believed
4   that this meant that flight following information was saved automatically, not collected
5   automatically.  Joint Claim Construction and Prehearing Statement, Dkt No. 52 at A-1
6   ("'recorded' means 'automatically stored'").  There is nothing in Golden Hour's preliminary
7   infringement contentions incompatible with this understanding.  "Automatic flight following
8   services" could refer to either flight following services where information was manually collected
9   and automatically stored or where information was automatically collected and automatically
10  stored.  If anything, this ambiguity demonstrates that Golden Hour's infringement contentions
11  were inadequate in the first instance.  But still further, even if HSI somehow deciphered Golden
12  Hour's infringement contentions, they still would not say anything about whether the claims were
13  *limited* to automatic collection of transportation tracking information.
14  Golden Hour's allegations regarding its separate lawsuit in Texas against emsCharts, Inc.
15  are similarly misplaced.  In the Texas case, Golden Hour argued that "recorded" meant
16  "automatically stored" and "instructions for tracking" meant "computer software for
17  automatically storing positions on."  Berretta Dec. Ex. L at 3.  Its position is substantively the
18  same as that expressed in its preliminary infringement contentions in this case and, for the reasons
19  discussed above, provides no indication of Golden Hour's secret theory that "recorded" really
20  means "automatically collected."  Even if Golden Hour's pleadings in another case revealed this
21  secret theory (which they does not), HSI cannot be held to have complete knowledge of a case in
22  which it is not a party.  Until Golden Hour's summary judgment briefing, HSI never knew that
23  Golden Hour alleged that "recorded" included "collected automatically."  Had it known of
24  Golden Hour's secret theory, HSI would have set forth its contention earlier that there is no
25  enablement for such a construction.  The '073 patent never describes automatically collecting
26  flight following information at all, and certainly has no enabling disclosure of this alleged claim
27  limitation.
28  HSI's motion to amend its preliminary invalidity contentions is directed to conform the

-14-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

contentions to newly produced evidence and to rebut Golden Hour's newly asserted theories regarding enablement.  Golden Hour concedes that the amendments directed to enablement are not prejudicial.  Golden Hour is not harmed by the amendments regarding the documents produced by Mr. Freeman because discovery is still open.  HSI has not unduly delayed this motion as a litigation tactic.  The documents were produced and Golden Hour's new theories were revealed during summary judgment.  HSI moved immediately after summary judgment ended.  HSI has fulfilled all requirements for allowing its preliminary invalidity contentions to be amended.

Dated: June 13, 2008                                             FENWICK & WEST LLP

By: _____/s/ Heather N. Mewes_____

Attorneys for Defendant and Counterclaimant
HEALTH SERVICES INTEGRATION, INC.